CHARLES L. PATRONE & another *vs.* JOSEPH V. FALCONE, trustee.

Barnstable.    January 8, 1963. — April 2, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Equitable Restrictions.*

A restriction imposed by a common grantor on each of the numerous house lots shown on a recorded development plan of a tract of land in a residential area, that "The design and location on the premises of any dwelling, buildings, fence, sign or other structure or device appurtenant thereto must be approved by the grantor, his heirs or assigns before construction thereof is begun," was intended to be exercised only by the common grantor, his heirs or assigns, and was not intended to be appurtenant to each lot in the development, even though the restriction was imposed on each lot with another restriction limiting buildings thereon to one single family dwelling and appurtenant buildings and the restrictions were imposed pursuant to a scheme for uniform development of the tract and were intended to benefit all the lots; and in a suit in equity

by the owner of one of the granted lots against the owner of another such lot the plaintiff was not entitled to have the defendant enjoined from constructing a two car garage on the defendant's lot without first obtaining approval by the plaintiff of its design and location.

BILL IN EQUITY filed in the Superior Court on October 20, 1960.

The suit was heard by *Paquet*, J.

*James W. Kelleher* (*Isadore O. Goverman* with him) for the defendant.

*Robert W. MacDonald* for the plaintiffs.

SPALDING, J.　This is a suit to enjoin the defendant from constructing a two car garage on his land.　From a decree granting the relief sought, the defendant appealed.　There is a report of the material facts and the evidence is reported.

The facts are these.　In 1949 Earl G. Boardman, who owned a parcel of land in the Wild Harbor section of Falmouth, recorded a development plan which divided the property into twenty-two house lots.　The plaintiffs, husband and wife, are the owners of lot 20 shown on this plan, and the defendant, as trustee, is the owner of lot 16.　The two lots are contiguous.　The development is a "nice summer residential area consisting of single family dwellings."　The lots vary in size from 10,000 to 14,000 square feet.　Lot 16 was conveyed by Boardman to Louis T. Falcone by a deed dated December 8, 1950.　On July 5, 1956, Falcone conveyed this lot, on which a single family house had been built, to the defendant Joseph V. Falcone as trustee.　The plaintiffs acquired lot 20 from Boardman on March 31, 1953, and in 1955 built a single family house on it.　The deed of lot 16 to Louis T. Falcone and the deed of lot 20 to the plaintiffs contained this language: "Said land is conveyed subject to the following restrictions unless released by the grantor, his heirs, or assigns: No building shall be erected, placed, or maintained thereon other than one detached dwelling house for the occupancy of one family, and appurtenant buildings.　The design and location on the premises of any dwelling, buildings, fence, sign or other structure or device appurtenant thereto must be approved by the

grantor, his heirs or assigns before construction thereof is begun." From 1949 to 1955 Boardman sold and conveyed sixteen lots, all of which contained the restrictions just quoted.

In the deed from Louis T. Falcone to the defendant the quoted restrictions were incorporated by reference to an earlier deed. The defendant's deed also stated that these "restrictions are imposed for the benefit of the other lot owners in said development." On July 12, 1955, Boardman conveyed the remaining six lots to Louis T. Falcone. In this deed Boardman incorporated the above restrictions by reference to an earlier deed, and stated that the "restrictions are imposed for the benefit of the other lot owners in said development." This deed also contained the following: "Intending to convey and hereby conveying all my right, title, and interest in the described premises including the right to approve [the] design and location of buildings and structures heretofore reserved in conveyance of other lots."

In October, 1960, having obtained a building permit from the town of Falmouth, the defendant commenced the construction of a two car garage on lot 16. The defendant did not obtain the plaintiffs' approval with respect to the design and location of this structure. At this point the plaintiffs instituted the present suit to enjoin the defendant from proceeding with the building of the garage.

The judge concluded that the "presence of a development plan duly recorded, the issuance of restrictive deeds, an expressed intention to benefit the other grantees, [and] the nature of the area (a seaside resort where exposure and access are of prime importance)" warranted a finding that the restrictions were "imposed for the benefit of all [the] lot owners in the tract"; that the purpose of the common grantor, as evidenced by his acts and the language used in the deeds, was to obtain substantial uniformity in the type of building and use of the lots; that this uniform scheme of development was not negatived by the right reserved by the common grantor to release the restrictions; and that the

Patrone *v.* Falcone.

common grantor's "purpose in imposing the restrictions was for the benefit of the lot owners generally and [that] there was created a mutuality of quasi-covenant which enables each lot owner to enforce the restrictions as against each other lot owner."

The judge entered a decree enjoining the defendant from erecting on lot 16 a two car garage (prior to December 20, 1979, when the restrictions by reason of G. L. c. 184, § 23, would expire) unless the approval of the plaintiffs or their successors in title to the design and location of the garage is first obtained. The decree also ordered the defendant to remove so much of the garage as had already been constructed.[1]

This decree cannot stand.

To enable a grantee to enforce a restriction in a deed of a common grantor against another grantee he must establish that the restriction runs with the land. "A restriction, to be attached to [the] land by way of benefit, must not only tend to benefit that land itself . . . but must also be intended to be appurtenant to that land." *Snow* v. *Van Dam,* 291 Mass. 477, 480. The existence of a scheme or plan designed to obtain substantial uniformity in building and use in a tract under development has often been relied on to show an intention to attach the benefit of the restrictions on each lot to every other lot in the tract. *Snow* v. *Van Dam, supra,* at 480–481. *Gilbert* v. *Repertory, Inc.* 302 Mass. 105, 107. *Sterling Realty Co.* v. *Tredennick,* 319 Mass. 153, 156.

Each deed here contained a clause whereby the common grantor reserved the right to release the restrictions. Heretofore, we have not had occasion to consider the effect of such a reservation with respect to the existence of a common scheme. Elsewhere it has been held that a reservation by a common grantor of a general power to release the restrictions on particular lots negatives the intention to establish a common scheme. *Gibney* v. *Stockdale Corp.* 20 Del. Ch. 272, 277. *Brueggen* v. *Boehn,* 344 S. W. 404 (Ky.). *Bride* v. *Finegan,* 226 Md. 356, 360. *Rose* v. *Jasma Realty*

---

[1] The decree granted certain relief to the defendant under his counterclaim but with this we are not concerned, for the plaintiffs did not appeal and the defendant's appeal does not challenge this portion of the decree.

*Corp.* 218 App. Div. (N. Y.) 646.   *Maples* v. *Horton,* 239 N. C. 394, 398.   See annotation in 19 A. L. R. 2d 1274, 1282 et seq.

However, we need not consider the effect of such a reservation because the restriction which the plaintiffs seek to enforce cannot fairly be construed as intended to be appurtenant to the plaintiffs' land.   We are of opinion that both the language of the restriction and reason compel the conclusion that the right of approval was intended to be exercised only by the grantor, his heirs, or assigns.   A contrary construction would place an extremely onerous burden on each lot owner in the development, for no grantee could build without the approval, as to location and design, of every other grantee; if one grantee has the right of approval, all have it.   It seems to us highly unlikely that the common grantor could have intended by implication to give this power of approval, which involves matters of personal taste and discretion, to each of the grantees in the development.   Unless all the other lot owners were in agreement on the matter of location and design — which would be highly unlikely — a lot owner would be unable to erect a structure on his land.

The final decree is reversed and a new decree is to be entered dismissing the bill.   The defendant is to have costs of this appeal.

*So ordered.*