ROYAL F. PULVER ET AL. *v.* JAMES MASCOLO ET AL.

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued October 3—decided December 19, 1967

*Henry B. Maretz,* with whom, on the brief, was *Alfonse C. Fasano,* for the appellants (plaintiffs).

*David B. Cohen,* for the appellees (defendants).

RYAN, J. In this action, the plaintiffs seek an injunction to restrain the defendants from constructing on the defendants' property a small outbuilding to contain the filtering equipment for a swimming pool, bathhouse facilities and toilet facilities in violation of a restrictive covenant. The case was submitted on a stipulation of facts. The trial court rendered judgment for the defendants, and the plaintiffs have appealed to us.

In the late 1940's, and into the 1950's, The Berner Lohne Company, Inc., hereinafter referred to as the company, owned a certain tract of land in the town of Orange known as Green Hill Acres. It proceeded to develop the land for sale and, through the years which followed, sold some lots and also sold some houses which it built on some of its lots. In all of the sales transactions, the company had the following provision inserted in its deed of conveyance: "Said premises are conveyed subject to the follow-

ing restriction: that said lot is to be used solely and wholly for residential purposes; that only a one-family house to cost not less than $7500 shall be erected or maintained on said lot; that no board fences shall be erected on said lot, but nothing herein shall be construed so as to prevent the erection of a private garage on said lot for the use of the owners or occupants of such dwelling house to accommodate not more than three cars, which garage, however, must be attached to and be a part of the dwelling; no chicken coops or chickens are to be permitted or kept on said premises, all construction plans and specifications of any building to be erected thereon shall be first submitted to and be approved by The Berner Lohne Co., Inc., its successors and assigns, failure to approve or disapprove such plans within 30 days after the same have been submitted, then such approval shall not be required; the completion of construction in 30 days shall be construed prima facie evidence of approval."

As of some years ago, and prior to the commencement of this action, the company had completely disposed of all of its lots in the Green Hill Acres development. The plaintiffs acquired their property on March 17, 1960, from Gudolf M. and Martha Poverud, who had acquired title to it from the company on May 16, 1951. The deed from the company to the Poveruds contained the covenant recited above, and the deed from the Poveruds to the plaintiffs specifically referred to the covenant.

The defendants acquired their property on or about November 13, 1964, from one Donat, who had acquired it from one Elston on March 13, 1956. Elston had purchased the property from the company. All deeds in the defendants' chain of title contained either a full recitation of the covenant or

a specific reference thereto. In 1965, the defendants constructed a swimming pool at the rear of their property. After completing the pool, the defendants commenced to build a small structure to house and contain the filtering equipment for the pool, bathhouse facilities and toilet facilities. This structure was located to the rear of the pool and was not attached to the main dwelling. The defendants voluntarily stopped construction on the unattached outbuilding when the issue was raised by certain of their neighbors that the defendants had not submitted the plans for it to the company or obtained its prior approval. At a conference held at the request of the defendants at the offices of counsel for the company, the defendants stated that they would voluntarily cease construction and would not continue with it without previous consultation with the company. In the early part of 1966, the defendants communicated with the company relative to the commencement of work on the proposed structure. The company informed the defendants that it had no interest in, or concern with, the proposal, that it no longer owned property within the tract, and that it had no interest in whether construction was commenced or stopped. In a letter, the company expressed its disinterest in enforcing the restrictive covenant.

Although the defendants were aware that the plaintiffs objected to the proposed construction, they commenced work on it. The outbuilding in question was a small, white wooden structure well removed from the plaintiffs' house.

The trial court concluded that the covenant in the deed was personal to the company, the original grantor, that it alone has the right to enforce or waive the restriction, that the defendants have com-

plied fully with the requirements of the restriction, that the defendants have received "complete absolution" from the company, and that it would be impractical or impossible for the defendants to obtain permission from all the succeeding property owners in the area. Judgment was rendered for the defendants. The plaintiffs assign error in the failure of the trial court to conclude that the restrictive covenants run with the land, that they are in the nature of negative or equitable easements enforceable by the grantees against each other, and that the plaintiffs, as the successors and assigns of the company, may enforce the covenants.

The covenant presents two basic questions: (1) Does it prohibit the erection of the outbuilding in question? (2) Does the portion of the covenant which requires submission to, and approval by, the company of all construction plans and specifications for any building to be erected enure to the benefit of the plaintiffs, or is it, as found by the trial court, personal to the company?

It is clear that the use of the property is restricted to residential purposes, that the only house which may be erected or maintained thereon is a one-family house to cost not less than $7500, and that an attached garage for not more than three cars for the use of the owners or occupants of the house is permitted. The covenant expressly prohibits the erection of board fences and chicken coops and the keeping of chickens on the premises. The erection of no other type of building is expressly prohibited. The plaintiffs claim that the phrase "only a one-family house . . . shall be erected or maintained" was intended to prohibit the erection on the premises of any other building except an attached garage rather than to limit the form, design and use of the

structure. If this were so, there would be no necessity for the specific prohibition of chicken coops. Had it been the intent of the parties to prohibit the erection of any other building or outbuilding, they would naturally have so specified in this covenant in connection with the prohibition of chicken coops. *Neptune Park Assn.* v. *Steinberg,* 138 Conn. 357, 361, 84 A.2d 687.

In the determination of the meaning in which words in a restrictive covenant are used, the controlling factor, when discovered, is the expressed intent. Intent unexpressed will be unavailing. If the language of a restrictive covenant, when read in the light which the context and surrounding circumstances throw upon it, is of doubtful meaning, it will be construed against, rather than in favor of, the covenant. Restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes which go with title and possession, are not to be extended by implication. *Katsoff* v. *Lucertini,* 141 Conn. 74, 77, 78, 103 A.2d 812; *B. T. Harris Corporation* v. *Bulova,* 135 Conn. 356, 362, 64 A.2d 542; *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 296, 82 A. 561. The existence of the specific restriction as to chicken coops militates against the plaintiffs' claim. "When the grantor specifically prohibits the use of property for a particular purpose, the more reasonable construction would be that no other uses are prohibited. At least an intention to further extend the limitations is very doubtful. It is at this point that we must apply the rule of strict construction against a restraint on the use of land." *Connor* v. *Clemons,* 308 Ky. 9, 12, 213 S.W.2d 438. The covenant providing that only a one-family house may be erected or maintained is clearly directed at the form, design

and use of the permitted structure. It is not permissible for us to speculate concerning other buildings, the construction of which the grantor wished to prevent. The covenant contains no express prohibition of the outbuilding in question, and there is nothing in the record to support the plaintiffs' claim that the parties to the covenant intended to prohibit the erection of any and all buildings except a one-family house with attached garage.

There remains to be considered the portion of the covenant which provides that "all construction plans and specifications of any building to be erected thereon shall be first submitted to and be approved by The Berner Lohne Company, Inc., its successors and assigns." The plaintiffs urge that this is a restrictive covenant running with the land; *Stamford* v. *Vuono,* 108 Conn. 359, 143 A.2d 245; that under a general development scheme, where the owner divides the land into building lots to be sold by deeds containing substantially uniform restrictions, any grantee may enforce the restrictions against any other grantee; *Hooker* v. *Alexander,* 129 Conn. 433, 436, 29 A.2d 308; *Maganini* v. *Hodgson,* 138 Conn. 188, 192, 82 A.2d 801; and that the trial court erred in holding that the restriction in the deed is personal to the company, the original grantor. The trial court based its conclusion on the holding in *Rossini* v. *Freeman,* 136 Conn. 321, 71 A.2d 98. The plaintiffs claim that in the *Rossini* case, the covenant failed to include the successors or assigns of the grantor, whereas in the instant case, approval is required by the company, "its successors and assigns."

The use of words of succession binding the "heirs and assigns" of the grantee of restricted land does not in itself cause the burden to run if the nature

of the restriction is not one which could run with the land. *Fishback* v. *Dozier,* 362 S.W.2d 490, 491 (Ky.). It is well settled that a covenant personal in its nature and relating to something collateral to the land cannot be made to run with the land so as to charge the assignee by the fact that the covenantor covenanted on behalf of himself and his assigns. 20 Am. Jur. 2d 602, Covenants, Conditions and Restrictions, § 32. A covenant by a grantee not to erect any dwelling until its exterior lines had been approved by the grantor, or by an architect selected by him, affords an illustration of a covenant which does not run with the land. *Julian* v. *Lawton,* 240 N.C. 436, 440, 82 S.E.2d 210. In that case, the court held that this was a covenant personal to the grantor which ended at the grantor's death.

The case of *Patrone* v. *Falcone,* 345 Mass. 659, 189 N.E.2d 228, is very similar to the instant case. There, the common grantor imposed a restrictive covenant on each of the numerous lots shown on a recorded development plan of a tract of land in a residential area. The covenant provided: "Said land is conveyed subject to the following restrictions . . . : No building shall be erected, placed, or maintained thereon other than one detached dwelling house for the occupancy of one family, and appurtenant buildings. The design and location on the premises of any dwelling, buildings, fence, sign or other structure or device appurtenant thereto must be approved by the grantor, his heirs or assigns before construction thereof is begun." Id., 660. The plaintiffs sought to restrain the defendant from constructing a two-car garage on his property. The defendant's deed made specific reference to the restrictions and provided that the "restrictions are

imposed for the benefit of the other lot owners in said development." Id., 661. The original grantor had sold all of the lots before the action arose. The Massachusetts court reversed the conclusion of the trial court that this restriction ran with the land so as to be enforceable by one grantee of the common grantor against another and stated (p. 663): "[T]he restriction which the plaintiffs seek to enforce cannot fairly be construed as intended to be appurtenant to the plaintiffs' land. We are of the opinion that both the language of the restriction and reason compel the conclusion that the right of approval was intended to be exercised only by the grantor, his heirs, or assigns. A contrary construction would place an extremely onerous burden on each lot owner in the development, for no grantee could build without the approval, as to location and design, of every other grantee; if one grantee has a right of approval, all have it. It seems to us highly unlikely that the common grantor could have intended by implication to give this power of approval, which involves matters of personal taste and discretion, to each of the grantees in the development. Unless all the other lot owners were in agreement on the matter of location and design—which would be highly unlikely—a lot owner would be unable to erect a structure on his land."

We conclude first that the covenant did not expressly prohibit the erection of the outbuilding in question. Second, as to the portion of the covenant which required the prior approval of the company for the erection of any building, the test applied is whether it was the intention of the owner in creating the restrictions on any lot to make the benefit of them available, not to itself, but to the owners of the other lots in the tract. *Baker* v. *Lunde,* 96 Conn.

530, 537, 114 A. 673. In the light of all the surrounding circumstances and the language used in the covenant, it is our conclusion that this portion of the covenant was not intended to, and did not, enure to the benefit of the plaintiffs. The right of prior approval was personal to the company and ceased to be effective when the company disposed of its interest in Green Hill Acres.

There is no error.

In this opinion the other judges concurred.