[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by the plaintiffs, Ronald and Marguerite Ade, to quiet title to their property on Week Street in New Canaan. General Statutes 47-31. The case was referred to an attorney trial referee pursuant to General Statutes 52-434(a)(4) and Practice Book 428 et seq.
The revised complaint of April 26, 1989 alleges that CT Page 896 the plaintiffs own approximately three acres on Weed Street acquired in a deed from J. W. Oechsle, dated July 31, 1987 and recorded in the New Canaan Land Records in Book 342 at page 969. The plaintiffs seek the determination of the scope and meaning of certain restrictive covenants referred to in this deed, viz., the premises were conveyed subject to "Restrictive covenants and agreements set forth in a deed from Indian Waters, Incorporated to H. Ware and Priscilla Place Knudsen dated January 19, 1953 and recorded in said Land Records in Book 94 at page 476."
The defendants, who are Marine Midland Bank and Claudia M. McGinley as executors of the estate of John R. McGinley, A. Rives McGinley and J. W. Cross III as trustees of the estate of said McGinley, Marilyn M. Johnston, John P. Mann and Charles L. Bailey, Jr. all own property either adjacent to or near the property of the plaintiffs.[1] These defendants counterclaimed seeking an injunction and alleging that they were the beneficiaries of a "common scheme" of restrictive covenants preventing the subdivision of the plaintiffs' property, and that the plaintiffs took title knowing of the restrictions.
In addition, the defendant Mann alleges that he is the beneficiary of restrictions contained in a deed dated June 1, 1949 from Indian Waters, Incorporated ("Indian Waters") to Rogers, his predecessor in title, which stated that Indian Waters intended to impose similar restrictions on the "lot south of the premises hereinabove described," which lot is now owned by the plaintiff. It was further alleged that the deed from Indian Waters to the plaintiffs' predecessors in title imposed the same restrictions.
Another theory offered by defendants in support of request for an injunction against subdivision is that Indian Waters, upon the occasion of selling the last lot to McGinley, quitclaimed to him and "his heirs and assigns forever" the right to enforce the restrictions described above.
In their answer to the counterclaim the plaintiffs concede that they "intend to subdivide their property and agree that a subdivision would be a violation of restriction no. 3 but do not agree that the defendants have any right to enforce the restrictions."
The issues as framed by the plaintiffs are set out in their brief. "[T]he Court is asked to determine the validity of certain restrictive covenants imposed on the plaintiffs' parcel by the developer and who, if anyone has the right to enforce any of these restrictive covenants." The restrictive CT Page 897 covenants referred to in the deed from Oechsle to the plaintiffs are contained in the deed from Indian Waters, the developer of some fifty-five acres in New Canaan, to Knudsen, plaintiffs' predecessor in title, dated January 19, 1953, as stated previously. This deed contained ten restrictions which ". . . shall run with the land and be binding upon the grantees, their heirs and assigns forever." The plaintiffs concede that one, two, eight and ten are enforceable by these defendants.[2] They claim, however, that restriction number 3, as well as numbers 4, 5, 6, 7 and 9, were personal to the common grantor, Indian Waters, because they all refer to the necessity of approval by Indian Waters, and therefore are not enforceable by these defendants. The key restriction is no. 3 which states that "[S]aid premises shall not be subdivided for purposes of sale, mortgage or other transfer of the same, without the written consent of the grantor, or its successors."[3]
Thus the issue in this case is a rather narrow one. The plaintiffs admit they wish to subdivide their property, and they concede that this would violate restrictive covenant no. 3, but they assert that none of the defendants has any right to enforce this restriction, because only the developer, Indian Waters, had the right to do so, and that corporation no longer exists. The plaintiffs point to the language in no. 3 which refers to "consent of the grantor or its successors".
Prior to trial the parties entered into a comprehensive stipulation of facts and thus the role of the attorney trial referee as a factfinder was greatly circumscribed. His recommendations as to the judgment that the court should enter have been considered, but are not binding in the light of Pilato v. Kapur, 22 Conn. App. 282, 283, ___ A.2d ___ (1990), which points up the distinction between findings of fact and conclusions of law ("the trial court was bound by the attorney referee's findings of fact . . . It was not bound by his conclusions of law.")
The stipulation encompasses some twenty-eight elements, and was later expanded by further stipulations of fact entered into on October 4, 1989. Number 9 agrees that the defendant Indian Waters, which was dissolved over twenty years ago, received some 51.68 acres from Schumann which include the property belonging to both the plaintiffs and defendants in this case. Number 15 states that the deeds to the plaintiffs and to the defendants refer to the restrictions set out in the various deeds from Indian Waters to the initial grantees. Numbers 16 and 17 point out that Indian Waters subdivided the property and ultimately sold approximately fifteen lots, and that with four exceptions CT Page 898 each deed set forth specifically the restrictions referred to previously, including number 3 ("Said premises shall not be subdivided for the purpose of sale . . . without the written consent of the grantor, or its successors.").
Number 18 provides as to the remaining four deeds that the grantees could subdivide their premises into two lots but that the resulting two lots would be subject to the usual restrictive covenants, which in two cases were specifically set forth, and in the other two were referred to.
Stipulation 23 refers to a quitclaim deed from Indian Waters to one John R. McGinley, whose executors and trustees are defendants in this action, and which deed grants McGinley the right to enforce deed restrictions against the predecessors in title of Mr. and Mrs. Ade.
The supplemental stipulation indicates that the "deeds into all of the present defendant owners of lots contain reference to the restrictive covenants", and that the "mesne conveyances from the original grantees from Indian Waters to the defendant owners contain references to the restrictions."
The referee's conclusion that judgment should enter for the plaintiff appears to me to be slightly ambiguous. He found that restrictive covenant #3, prohibiting subdivision, was personal to the grantor Indian Waters and hence unenforceable by these defendants. The referee, however, went on to add that this conclusion "gain plaintiff nothing" because "those restriction which restrict the premises to private residential purposes and restrict each lot sold to the construction of only a single family residence thereon, are in fact binding upon the plaintiffs and enforceable by any of the owners of the three additional lots owned by the defendants who were included in this action." This seems to be saying that the plaintiffs cannot subdivide their property, not because of restriction #3, but rather on account of #2 which limits each lot to one dwelling. ("No building shall be erected or maintained on said premises, except a single family private residence together with such outbuildings as are usually appurtenant to a private residence.") This is much more explicit language than that employed in Contegni v. Payne, 18 Conn. App. 47, 65-66,557 A.2d 122, cert. den. 211 Conn. 806 (1989), where the deed prohibited the erection of any building except "one family house". This was interpreted to mean a single family home, restricting the lot to one house ("one family house imposes both a numerical and type limitation.") CT Page 899
While I agree with this conclusion of the referee, which in itself suffices to warrant judgment for the defendants prohibiting a subdivision which would necessarily include or involve the construction of a second home, I also agree with the defendants that there are additional grounds justifying judgment in their favor.
This conclusion is based on the belief that restrictive convenant #3 prohibiting subdivision is also binding on the plaintiffs and enforceable by these defendants under each of the theories of restrictive covenants described in Contegni v. Payne, supra, 51:
 In General, restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deed executed by the owner of property who is subdividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee . . . for the benefit and protection of his adjoining land which he retains.
As to mutual covenant by adjoining landowners, the deed from Indian Waters to Rodgers of property now owned by the defendant Mann (June 1, 1949, recorded Book 84 at page 295) states that the grantor "agrees to impose similar restrictions" on lots to be created to the south and to the west. The lot to the south is now owned by the plaintiffs, and the lot to the west is owned by the defendant Mann. The Mann property was thus sold as part of several lots around a pond and was subject to restrictions prohibiting subdivision, and the common grantor did in fact impose similar restrictions on the lot owned by the Ades. This I believe supports the right of defendant Mann to enforce the covenants against the plaintiffs as owners of adjoining property.
Contegni v. Payne, supra, 53. indicates four factors pointing toward a uniform plan of development, all of which I believe are present in this case. "(1) The common grantor's selling or stating an intention to sell an entire tract of land, (2) the common grantor's exhibiting a map or plot of the entire tract at the time of the sale of one of the parcels, (3) the actual development of the tract in accordance with the restrictions, and (4) a substantial uniformity in the restrictions imposed in the deeds executed by the common grantor."
The record indicates that all fifteen lots were sold in the eight-year period beginning with Rodgers in 1949 and CT Page 900 ending with Bailey in 1957. Next there was a recorded map, #1795. As to actual development of the subdivision, there is no claim by the plaintiffs that the tract has been developed other than in accordance with the restrictions. Fourthly, there is a substantial uniformity in the language of the restrictions, including that against subdivision. ("Such uniformity is especially important to a finding that a common plan of development exists.") Contegni v. Payne, supra, 57.
The third type of covenant concerning restrictions benefiting land retained by the grantor is also present. When Indian Waters conveyed land to Knudsen in 1953, the property now owned by the plaintiffs, it still retained two lots, one of which was sold in 1954 to Anderson and the other to Bailey in 1957. ("If the covenant is for the benefit of the retained land, it runs with the land and may be enforced by the successor in title to the retained land against the successor in title to the conveyed land, on the principle which prevents one with notice of the just rights of others from defeating those rights.") Contegni v. Payne, supra, 61. The Bailey property is now owned by the McGinley estate.
As to the plaintiffs' claim that restriction #3 against subdivision was personal to the grantor, citing Pulver v. Mascola, 155 Conn. 644, 650-51, 237 A.2d 97 (1967), that case refers to the approval of construction plans for the erection of a home. Once the grantor ceases to exist, there would be no one to approve plans for a home. In this case the restriction is against subdivision and Indian Waters as long as it existed retained the right to consent to further subdivisions as it continued to develop the property. As matter of fact Indian Waters did consent on occasion to further subdivision, but after the last lot was sold it went out of existence and the right to consent terminated. Both cases cited in Pulver as authority, from North Carolina and Massachusetts, refer to approval of construction plans. This seems quite different from the matter of subdivision in the case at. bar.
Even if the restriction against subdivision was personal to Indian Waters, in 1961 (Book 146 at page 191), Indian Waters quitclaimed to McGinley the right to enforce the restrictive covenants, and therefore defendant McGinley has the right to enforce restriction #3 preventing subdivision.
In summary, I believe the defendants are entitled to prevail on each of the following different theories: (i) that the attorney trial referee is correct that restrictive CT Page 901 covenant #2 regarding one dwelling per lot prohibits subdivision; (ii) mutual covenants in deeds by adjoining landowners prohibit subdivision; (iii) there was uniform plan of development preventing subdivision; (iv) Indian Waters imposed covenants for the protection of its retained land; and (v) the executors and trustees of the McGinley lot have the specific right to enforce the restrictions.
Judgment may therefore enter for the defendants with respect to plaintiffs' complaint, thus denying their request to "quiet title" as to the defendants' claims concerning subdivision, and for the defendants on their counterclaim enjoining and restricting the plaintiffs from subdividing their property at 266 Weed Street, New Canaan. A proper judgment file should be prepared by the defendants, submitted to plaintiffs for their approval, and in case of any disagreement with respect thereto, the matter should be claimed to the short calendar for resolution.
So Ordered.
Dated at Stamford, Connecticut this 13 day of August 1990.
WILLIAM B. LEWIS, Judge