[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiffs seek a Declaratory Judgment in a fifteen paragraph Complaint. The Defendants admit the allegations contained in paragraphs one through nine and in paragraph eleven. The court incorporates those paragraphs into this Memorandum of Decision and makes them findings of fact. The Plaintiffs' seek a judicial determination of:
 1. The practical meaning, scope and effect of the words "obstruct the view" as used in the deed restriction.
 2. Whether or not the view restriction continues to be enforceable against them.
 3. Whether, if said restriction is enforceable, the construction of one or more single family homes will "obstruct" the view of the Defendants within the meaning of the restriction.
 4. The Plaintiffs further request such other relief as at law or equity CT Page 7722 may appertain.
As requested by the parties, the court made a visit to the premises to experience the view firsthand. The parties stipulated to, and did hold up poles at a height of thirty-five feet at the proposed two house locations, so that the court could get a better idea of the relationship of the two houses to the defendants' view.
The court has also, at the parties' request, watched a videotape (Defendants' Exhibit 9), showing icons of the homes of the approximate size and shape of the proposed homes. These icons were sited at the approximate locations proposed by the Plaintiffs.
The following legal principles are pertinent to this case:
 Controversies involving interpretation of restrictive convenants must be decided on a case-by-case basis. The party seeking to enforce the restrictions, bears the burden of proving that these restrictions apply to the acts of which he or she is complaining. Tiffany on Real Property, Section 858 as set forth in the October 1996 Cumulative Supplement (Vol. 3), P 300.
 We must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties . . . The language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent. . . . The meaning and effect of the reservation are to be determined, not by the actual intent of the parites, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances. . . ." (Citations omitted; internal quotation marks omitted.) Lago v. Guerrette, supra, 219 Conn. 267-68; see also Pulver v. Mascolo, 155 Conn. 644, 649, 237 A.2d 97 (1967).
 Castonguay v. Plourde, 46 Conn. App. 251, 257 (1997).
The court has reviewed the oral testimony and the exhibits introduced into evidence, and having evaluated the credibility of the witnesses, reaches the following conclusions.
1. Inasmuch as the deed restriction refers to "the view of CT Page 7723 the owner or owners of the lot" in question, the Defendant Wicks, as an owner of a part (although an extremely small part) of the lot, is entitled to claim the benefit of the restriction, along with the other owners, the Grellas, but only as to the view from that lot, and not from the lot adjoining to the South, where the Wicks home is. The covenant runs with the land inasmuch it was intended to protect the view from the Grella-Wicks lot.
2. Because of the distance of the proposed two homes from that lot, the difference in elevation, and the wide scope of the total view, the intrusion of the proposed homes on the Defendants' view would be minimal, and would fall far short of any reasonable definition of the words "obstruct the view". Obstruct means stand in the way of or interfere with. These houses will not stand in the way of or interfere with the view, unless the court gives a a tortured and purely technical and literal meaning to those words.
The scope and intent of the words "obstruct the view" are clear to the court; what Mr. Davenport did after the 1956 restriction is not needed to clarify any ambiguity in the words, because they are not ambiguous. Words by their very nature require reasonable interpretation. This does not make them unclear or ambiguous.
The court considers any effect the proposed homes may have on the view from the lot in question to be a matter of de minimis non curat lex.
The court's visit to the site was very helpful and plays a large part in this factual determination. The court spent a considerable amount of time studying the view, from many different angles, including the perspective from up against the west side of the Grella house. The view now, although extraordinary, is not flawless. If the two proposed homes are built, the view will still be extraordinary.
3. The two proposed homes may not exceed thirty-five feet in height nor may their `as built' eastern-most point be east of their eastern-most point as shown on Plaintiffs' Exhibit 6 (Lot 3 `possible house' and Lot 4 `possible house').
BY THE COURT
HON. RICHARD A. WALSH CT Page 7724