[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 4528
The plaintiffs, Barbara and Norman DeTullio, filed suit against the defendant, Chebrah Bikur Cholim, a/k/a Congregation Bikur Cholim, seeking declaratory relief with regard to a restrictive covenant incorporated into a deed they received when the plaintiffs purchased real property from the defendant. The following facts are not in dispute.
The subject property, located at 1541 Iranistan Avenue, a/k/a 1545 Iranistan Avenue, Bridgeport, Connecticut, was transferred from the defendant to the plaintiffs in 1988 by way of sale. From the time the defendant decided to sell the property in 1986, it made clear its position that it did not want the subject property used as a house of worship, and that a restrictive covenant to that effect would be contained in the eventual contract of sale and deed of conveyance. The deed from the defendant to the plaintiffs contains a covenant restricting the property's use for religious purposes which runs in perpetuity and does not provide for reversion upon breach. The restrictive covenant states: "Grantees, by the acceptance of this deed, covenant on behalf of themselves and their heirs and assigns forever that the premises shall not be used as a house of worship or for any other religious purposes whatsoever, and that no function or use shall be performed on the premises which would benefit any religious organization. This covenant shall run with the land." (Plaintiffs' Trial Exhibit 2, Contract of Sale and Purchase of Real Estate, Schedule B). The restrictive covenant was not included in the offer to purchase but was included in the sales contract.
When the defendant conveyed the property to the plaintiffs, it had no other interest in the area and retained no interest in adjoining land. The restrictive covenant was not one of mutual covenants between adjoining land owners, nor part of any area development plan or general scheme of real estate development. From 1894 until the sale to the plaintiffs in 1988, the premises had been used exclusively for religious purposes. At the time of conveyance, the plaintiffs were aware that the defendant was imposing a deed restriction against religious use of the property. After the closing, the plaintiffs remodeled the property for use as an interior design showroom/warehouse and opened for business. The property was used in this commercial capacity until 1993 when the plaintiffs' business failed and CT Page 4529 closed. The neighborhood surrounding the property is a mix of single and multi-family houses and small businesses. The property is no longer zoned for church use. None of the businesses currently located within one block of the property was originally built as a religious edifice. Additional facts will be recited below.
The plaintiffs argue that the restrictive covenant never took effect, since it is not one of the three recognized types of restrictive covenants allowed by Connecticut law. The defendant argues that there are more than three types of restrictive covenants, as found by the court, West, J., in denying the plaintiffs' motion for summary judgment. (Memorandum of Decision, Motion For Summary Judgment, West, J., October 3, 1997)
"In general, restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains." (Internal quotation marks omitted.) Contegni v. Payne,18 Conn. App. 47, 51, 557 A.2d 122, cert. denied, 211 Conn. 806,559 A.2d 1140 (1989)
No evidence was adduced at trial showing that the restrictive covenant here is one of the three general types of restrictive covenants recognized under Connecticut law. Indeed, the parties do not argue that any of the three general restrictive covenants are applicable to the facts here. Nevertheless, there is no requirement under Connecticut law that all restrictive covenants fit neatly into the three general categories described above. Therefore, this court must examine the restrictive covenant to determine whether it is reasonable when made in light of the surrounding circumstances.
"The test of the validity of [a] covenant is the reasonableness of the restraint imposed. . . . To meet this test successfully, the restraint must be limited in its operation with respect to time and place and afford no more than a fair and just protection to the interests of the party in whose favor it is to operate, without unduly interfering with the public interest." (Citation omitted; internal quotation marks omitted.) LampsonLumber Co. v. Caporale, 140 Conn. 679, 683, 102 A.2d 875 (1954). CT Page 4530
The restrictive covenant here is limited in place to the subject premises. No other properties are effected by the restrictive covenant. The use of the subject property is limited in its use only to the extent that it cannot be used for religious purposes. "When the grantor specifically prohibits the use of property for a particular purpose, the more reasonable construction would be that no other uses are prohibited." Pulverv. Mascolo, 155 Conn. 644, 649, 237 A.2d 97 (1967). The restrictive covenant has no limitation as to time.[1]
Therefore, the subject premises, a church edifice in appearance, can never be used for religious purposes.
The following evidence was adduced at trial. The president of the defendant congregation, Alexander Breiner, testified that he included the restrictive covenant as a condition of sale in 1986 to appease certain members of the congregation.[2] The defendant congregation was at that time readying to move to a new site, as a new synagogue had been built about a mile from the subject property. Several older members of the congregation had donated money for the building of the new structure on the condition that the subject premises not be used by another religious group after the defendant congregation relocated. Because the new synagogue could not be built without the financial support of these members, the restrictive covenant was inserted. According to Breiner, these older members are or were survivors of the Holocaust, and have strong emotional ties to the building. Reassuring these members that the subject property would not be used for religious purposes in the future was and remains the sole benefit of the restrictive covenant to either party.
The court's task is to determine whether the covenant was reasonable when made. This is a question of fact to be determined in light of all the circumstances surrounding the parties when the conveyance was made. Harris v. Pease, 16 Conn. Sup. 13, 16
(1948), aff'd, 135 Conn. 535, 66 A.2d 590 (1949) "Where a restriction is confined within reasonable bounds, and the party in whose favor it is made has an interest in the subject matter of the restriction, or others in privity with him have such an interest, it will be sustained. It must not, therefore, be supposed that incidents of a novel kind can be devised and attached to property at the fancy or caprice of any owner." (Internal quotation marks omitted.) 7 Thompson On Real Property (1962 Replacement) § 3161, p. 120. "To meet this test CT Page 4531 successfully, the restraint must be limited in its operation with respect to time and place and afford no more than a fair and just protection to the interests of the party in whose favor it is to operate, without unduly interfering with the public interest."Lampson Lumber Co. v. Caporale, supra, 140 Conn. 683. Covenants restricting the transfer of property "are usually sustained as being reasonable even though they may prevent competition and even though they involve no transfer of good will. . . . Such restrictions on the use of real property are considered less likely to affect the public interest adversely than a restraint on the activities of individuals. . . . Notwithstanding, there is still the obligation imposed by public policy, and that forbids unreasonable restraint." (Citations omitted.) Id., 684.
The court finds that the restrictive covenant here was unreasonable when made. Although the defendant argues that the restrictive covenant is not arbitrary or capricious, it must be recognized that the restriction forever prevents any subsequent owner from using the subject premises for religious purposes.[3] Thus, to uphold the restriction would ignore the fact that for almost one hundred years, the property served as a house of worship for Christian and Jewish congregations, and it remains in appearance a church edifice. Even the defendant recognized the long and distinguished history of the subject premises as a house of worship when it registered the property with the Connecticut Historical Commission as "Bikur Cholim Synagogue — Bridgeport" on November 27, 1997 — after it had sold the property on the condition that it not be used for religious purposes. (Plaintiff's Exhibit 4). Because the restrictive covenant prohibits only religious use of the property the defendant presumably would have no objection to the subject premises being used as a tavern or massage parlor. Such uses could only be viewed as unreasonable given the defendants emotional ties to the subject premises.
There was also no evidence that the purpose of the restrictive covenant was ever fulfilled. The defendant argues that it retained an interest in the subject matter of the restriction, which was forbidding future religious use of the property to appease certain members of its congregation so that funding for a new synagogue could be obtained. The restrictive covenant was drafted in 1986. The defendant introduced no evidence indicating when the defendants new synagogue was completed. Thus, there is no evidence indicating that at the time of the sale in 1988, the concerned congregation members would CT Page 4532 have pulled their financial support out of the "new" synagogue if the restrictive covenant was not included as a term of sale. Moreover, there is no evidence that the older members with an interest in the use of the property were still alive or that they remained concerned over the use of the subject premises at the time of the 1988 sale.[4] Accordingly, the court finds that the restrictive covenant was capricious and therefore unreasonable given the surrounding circumstances at the time of the sale to the plaintiffs in 1988.
Moreover, enforcement of the covenant would interfere with the public interest by keeping the subject property vacant. Testimony from the plaintiffs' relator, John Olson, indicates that most inquiries from prospective purchasers of the subject premises have come from religious groups, and that the restrictive covenant has reduced interest in the premises. Olson also opined that in its current state, the premises could not be used as a private residence.[5] Furthermore, evidence was adduced that indicates that one of the possible purchasers of the property is a Bridgeport congregation seeking a new house of worship because its own house of worship was destroyed by fire. Thus, there is evidence indicating that the interest the defendant had in the restrictive covenant is outweighed by the public good that would be advanced by freeing the subject property from the restrictive covenant.[6]
 DEFENSE OF WAIVER
The defendant contends that the plaintiffs have waived their right to contest the validity and enforcement of the restrictive covenant. "Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding. This presupposes that the person to be affected has knowledge of his rights, but does not wish to assert them. Intention to relinquish must appear, but acts and conduct . . . inconsistent with intention to terminate the contract are sufficient. The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy." (Citation omitted; internal quotation marks omitted.) GeneralAccident Ins. Co. of America v. Powers, Bolles, Houlihan Hartline, Inc., 50 Conn. App. 701, 711-12, 719 A.2d 77 (1998). CT Page 4533
The testimony of Barbara DeTullio indicates that she became aware at the closing that the subject premises could not be used for religious purposes.[7] She also testified, however, that she did not understand that the restrictive covenant would forever bar the subject premises from being used for religious purposes. The testimony of Barbara DeTullio therefore indicates that she did not have knowledge of the plaintiffs' rights at the time of closing, and that the plaintiffs' had no intention of relinquishing any right to contest the restrictive covenants validity as applied to future use by others. The defendants defense of waiver therefore fails.
 RELIEF
The plaintiffs seek (1) a declaration concerning the parties' rights to the subject property and the validity of the restrictive covenant; (2) a reformation of the deed by deletion of the restrictive covenant; (3) taxable costs and (4) other legal or equitable relief deemed proper and just.
Based upon the evidence adduced at trial and pursuant to Practice Book § 17-55,[8] the court finds that the restrictive covenant is void on the ground of unreasonableness.[9] Therefore, the restrictive covenant is no longer enforceable by the defendant. Nevertheless, as pointed out by the defendant, the plaintiffs are not entitled to reformation of the deed. "A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as a result of mutual mistake . . . . We have held that this also applies to actions for reformation of a deed . . . the function of which is merely to pass title to land, pursuant to the agreement of the parties. . . . Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties . . . ." (Citations omitted; internal quotation marks omitted.) Derby Savings Bank v. Oliwa,49 Conn. App. 602, 603-04, 714 A.2d 1278 (1998)
The defendant is correct that there is no evidence that a mutual mistake led to the inclusion of the restrictive covenant as a term of sale of the subject property. Barbara DeTullio CT Page 4534 testified that at the time of closing she did not realize that the property could never be used for religious purposes, but that she was aware that the restrictive covenant existed and was a term of the sale. Therefore, the plaintiffs are not entitled to a reformation of the deed.
"By statute . . . an unsuccessful litigant is obliged to pay the taxable costs of his opponent, which include not only disbursements actually made for such items as court filing fees, but also small allowances intended to defray partially the cost of some services normally performed by attorneys, such as `[f]or all proceedings before trial, fifty dollars' and `for the trial of an issue of law or fact, seventy-five dollars.' General Statutes § 52-257(a)(1) and (2). `[I]n difficult or extraordinary cases in the superior court, where a defense has been interposed, a further allowance, in the discretion of the court, not to exceed two hundred dollars' may be made. General Statutes §52-257(a)(3)." Doe v. Heintz, 204 Conn. 17, 22, 526 A.2d 1318
(1987). "An examination of General Statutes § 52-257, entitled `[f]ees of parties in civil actions,' reveals that most of the awards are automatic assessments, not involving the discretion of the court. The principal exceptions to this general rule are subsection (d) concerning minor specific matters and subsection (e) reserving to the court its time-honored discretion in taxing costs in actions in which equitable relief is granted."[10]Fengler v. Northwest Connecticut Homes, Inc., 215 Conn. 286, 291,575 A.2d 696 (1990). [THE COURT SHOULD AWARD TAXABLE COSTS ACCORDINGLY]
The plaintiffs have requested that the court award other legal or equitable relief. The court finds that no other relief is necessary. "While the mistake of only one of the parties inducing him to sign a contract cannot be a ground for a reformation of the contract, it may be a ground for its cancellation. . . . Though the mistake was not induced by the conduct of the other party, equity will grant relief if the latter, when he becomes aware of the mistake, seeks to take an unconscionable advantage of it." (Citation omitted.) Geremia v.Boyarsky, 107 Conn. 387, 390, 140 A. 749 (1928). The evidence does not show that the defendant is seeking an unconscionable advantage by attempting to enforce the restrictive covenant. There is no evidence indicating that the defendant knew or had good reason to know that the plaintiff did not understand the full ramifications of the restrictive covenant. Thus, there is no ground for cancellation of the restrictive covenant, which the CT Page 4535 court finds would be the only other type of relief applicable here.
Accordingly, the court finds that the restrictive covenant which is the subject of these proceedings is void on the ground that it is unreasonable and therefore unenforceable.
SKOLNICK, J.