CAESAR ROSSINI ET AL. *v.* LEWIS J. FREEMAN ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued November 1—decided December 15, 1949.

*Benjamin M. Chapnick,* with whom was *Samuel Schlein,* for the appellants (defendants).

*Irving Sweedler,* for the appellees (plaintiffs).

ELLS, J. This is an action for an injunction restraining the defendants from altering or converting a house from a two-family dwelling to one designed to accommodate three families in violation, it is claimed, of a restrictive covenant. Judgment was for the plaintiffs and the defendants have appealed.

Assignments of error attacked the finding of facts made by the trial court, but they are not pursued in the defendants' brief and we do not consider them. The claim made to us is that the conclusions reached by the trial court are not supported by the subordinate facts.

Two of the plaintiffs, the Rossinis, own and occupy premises known as 645 Whitney Avenue in New Haven. The other two plaintiffs, the Kushlans, have

owned and occupied since 1939 premises known as 653-655 Whitney Avenue. The defendants have owned and occupied since 1945 premises known as 659 Whitney Avenue. The present action was precipitated when they started to enlarge their house into a three-family one.

Benjamin Linsky acquired in 1921 a tract of land with a frontage of about 531 feet on the east side of Whitney Avenue. He subdivided the tract and sold separate lots to different grantees. The premises of the plaintiffs and the defendants are a part of the subdivision and were conveyed by Linsky to separate grantees by duly recorded deeds, subject to the following restrictions: ". . . that only one dwelling house of 16 rooms, 4 bathrooms, to accommodate not more than two families, the plans, specifications and design of which shall have been first approved by me, shall be erected on said land . . . ." The same provision was included in subsequent deeds to the successors in title, including the present parties, of the original grantees. It is obvious, although not directly found, that Linsky meant to sell the whole tract and not retain any part for himself. Upon these facts the conclusions reached by the trial court which are essential to the support of the judgment rendered are as follows: "The restrictions were for the common and mutual benefit of the buyers and their successors in title of the lots carved out of the original tract. The restrictions created negative or equitable easements in all of the lots which run with the land."

Restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes, are to be narrowly construed and are not to be extended by implication. If their language is of doubtful meaning, it will be construed against rather than in favor of the covenant. *Easterbrook* v. *Hebrew La-*

*dies Orphan Society,* 85 Conn. 289, 296, 82 A. 561; *Bassett* v. *Pepe,* 94 Conn. 631, 637, 110 A. 56; *Hooker* v. *Alexander,* 129 Conn. 433, 436, 29 A. 2d 308. " 'Restrictions, in the framing of which a subsequent purchaser has had no voice, ought to be so clear that by the acceptance of the deed that declares them he may reasonably be deemed to have understood and acceded to them.' " *Hickson* v. *Noroton Manor, Inc.,* 118 Conn. 180, 186, 171 A. 31, quoting from *Howland* v. *Andrus,* 81 N. J. Eq. 175, 181, 86 A. 391. The principal factors in determining the meaning and effect of a restrictive covenant are its language and the purpose it is intended to serve. ". . . it is always a question of the intention of the parties; . . . it must appear from the terms of the grant, or from the situation and surrounding circumstances, that it was the intention of the grantor in inserting the restriction to create a servitude or right which should inure to the benefit of the plaintiff's land, and should be annexed to it as an appurtenance." *Beals* v. *Case,* 138 Mass. 138, 140.

In the present case, the restriction is that "only one dwelling house . . . to accommodate not more than two families, the plans, specifications and design of which shall have been first approved by me, shall be erected on said land . . . ." That the covenant was intended to apply to the original "erection" of a house becomes apparent when it is read in the light of the provisions for the approval of the plans and design "by me"; that fits an interpretation of "erection" as meaning erection and nothing more; but it would be unreasonable to conclude that such an approval was to be required all down the years; the grantor might, for example, move to parts unknown or die. The restriction applies, as it states, to the original erection of the houses on the lots and it does not reach subsequent changes that may be made in them.

We have no occasion to decide whether the plaintiffs would be entitled to enforce the restriction if it did not contain the two provisions we have discussed. Our decision makes it unnecessary to discuss various other claims made by the parties.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the defendants.

In this opinion the other judges concurred.