# Benjamin Reich *v.* Ewald C. Thoennes et al.

| Superior Court | New Haven County | File No. 21531 |
|---|---|---|
| | at Waterbury | |

# Glenn N. Brown et al. *v.* Benjamin Reich et al.

| Superior Court | New Haven County | File No. 21487 |
|---|---|---|
| | at Waterbury | |

Memorandum filed May 5, 1954.

*Leon E. McCarthy,* of Ansonia, for the plaintiffs in No. 21487 and certain defendants in No. 21531.

*Joseph N. Perelmutter,* of Seymour, for the plaintiff in No. 21531 and named defendant in No. 21487.

*Carl A. Lundgren,* of Ansonia, for named defendant Thoennes in both cases.

PHILLIPS, J. In May, 1950, Thoennes, a defendant in both actions, subdivided a tract of land in Ansonia known as Hotchkiss Park into building lots and filed a map of the development in the office of the town clerk. Thereafter he sold lots to various people, among them the plaintiffs in the suit of Brown et al. v. Reich et al., hereinafter referred to as the Brown suit. The deeds contained a number of uniform restrictions, one of which was that "No lot shall be subdivided or sold except as a whole."

The map showed an island in the general form of a half circle, with its diameter or straight line being a part of the west line of Kathy Lane and its curved line or semicircumference forming one side of a semi-circular road called Hotchkiss Terrace. The island was divided into three lots, two of which, A2 and A3, fronted on Kathy Lane and also had frontage on Hotchkiss Terrace, while the third lot, A1, was a pie-shaped piece having frontage on Hotchkiss Terrace only. These three lots were sold on October 1, 1952, by Thoennes to Benjamin Reich, a defendant in the Brown suit and the plaintiff in the suit of Reich v.

Thoennes et al., referred to hereafter as the Reich suit. The deed contained the same restrictions, including that "No lot shall be subdivided or sold except as a whole."

Reich, who was a builder, immediately started digging cellars for three houses on the "island," in such locations that all three would front on Kathy Lane, whereas according to the layout on the map, the houses on only two lots could face on Kathy Lane and that on the third lot, A1, would have no frontage on Kathy Lane and would naturally face on Hotchkiss Terrace.

On May 27, 1953, before he gave deeds to any of these houses, Reich, upon the advice of a lawyer, reconveyed all three lots to Thoennes who, on the same day, conveyed the "island" back to Reich with a rearrangement of lots to conform to the location of the houses as built or building: the first piece, in the middle, with a frontage of sixty feet on Kathy Lane, the second piece, to the north, with a frontage of fifty feet on Kathy Lane, the third piece, to the south, with a frontage of fifty feet on Kathy Lane, and all three extending westerly to and having frontages on Hotchkiss Terrace.

On May 27, 1953, Reich conveyed the third piece to the Uluskis, defendants in both suits, and on July 23, 1953, conveyed the first, or middle, piece to the Krupas, defendants in both suits. Houses had been completed on these lots. The second, or northerly, piece is under contract of sale, but the deed has not been delivered, as a title searcher for the prospective mortgagee refused to certify to the title.

The Reich suit is against the developer and the property owners asking a judgment that the restriction clause as to subdivision of lots has not been violated by the plaintiff and that he is the absolute owner of the second piece and other equitable relief. The

Brown suit is by various property owners against Reich, Thoennes the developer, and the Krupas and Uluskis as owners of the first and third pieces. The plaintiffs in this suit claim breach of the restriction and ask for an injunction relocating the houses in accordance with the original layout, and also damages. The plaintiffs Brown, Fotion and Bonacum, who own houses across the street on Hotchkiss Terrace, in particular claim that they now look into three back yards, whereas under the layout which originally appeared on the map, they would see only two back yards at the most—of the houses on lots A2 and A3—and would look at the front of the house on A1, which would naturally face on Hotchkiss Terrace.

Restrictive covenants, inserted by a common grantor in deeds to successive grantees for the benefit of a tract of land divided by him into several parcels, are in the nature of a negative or equitable easement and may be enforced by the grantees, as against each other, through injunctive relief. *Armstrong* v. *Leverone,* 105 Conn. 464, 471. This principle has application to the defendant Reich, a grantee of lots and not to Thoennes, the developer. As to the express covenant that "No lot shall be subdivided or sold except as a whole," Reich has been guilty of no legal breach. The only two conveyances of individual lots he has made, to wit of the first piece and of the third piece, were of two lots exactly as conveyed to him by Thoennes by the deed of May 27, 1953. There was no subdivision of these lots, or selling of less than the whole of them. The same conclusion would apply to a conveyance of the second piece, if it is conveyed as a unit. He never conveyed lots A1, A2, or A3, except in one parcel to Thoennes on May 7, 1953.

The question then arises, as to whether equity should permit Reich to do by indirection what he could not do directly. Restrictive covenants, being in derogation of the common-law right to use land for

all lawful purposes, are to be narrowly construed and are not to be extended by implication. If their language is of doubtful meaning, it will be construed against rather than in favor of the covenant. *Rossini* v. *Freeman,* 136 Conn. 321, 323; *Hooker* v. *Alexander,* 129 Conn. 433, 436.

The principal factors in determining the meaning and effect of a restrictive covenant are its language and the purpose it is intended to serve; it is always a question of the intent of the parties. *Rossini* v. *Freeman,* supra, 324. "Subdivide" means "To divide the parts of into more parts; to divide again, as what has already been divided." Webster's New International Dictionary (2d Ed.). "Subdivision means to divide into smaller parts the same thing or subject-matter. . . ." *Kansas City* v. *Neal,* 122 Mo. 232, 234. The purpose of the restriction in question was to prevent any lot owner in the development from dividing his lot into two or more parts and from building more than one house on his lot. The end result of the Thoennes-Reich transactions did not violate the intent and purpose of the restriction. The island is still divided into only three lots. The only change is in the rearrangement of the lots.

The equities in the case do not favor the plaintiffs in the Brown suit. They stood by while the three houses were being built without making any complaint to either Thoennes or Reich, with the possible exception of the plaintiff Brown. The latter claims to have telephoned Thoennes and made some sort of protest, about August, 1953, but the two houses on the first and third piece were then completed and that on the second piece was under way. The house on the first, or center, piece, was the most apparent evidence of a violation, if there was one. It was not until the fall of 1953 when the Reich suit to quiet title was begun that any real objection was made to the new arrangement. At that time all three houses had been

completed; two were occupied and the third was under contract of sale.

The defendant Reich was not guilty of a legal breach of the restriction, or of such a violation of its intent and purpose by indirection that equity could interfere.

The next question to consider is whether the rearrangement of the size and shape of the lots on the island constituted a violation of any covenant, express or implied, by the developer Thoennes. There was certainly no express covenant in any of his deeds to the plaintiffs in the *Brown* suit that the lots in the island would be of the size and shape delineated on the map. Oral representations, if any were in fact made—and this is extremely doubtful upon the evidence—are not material, as this suit was not and could not be based upon oral representations. General Statutes § 8293.

Nor could any covenant be implied from the recording of a map showing the layout of the lots. The sale of lots with reference to a map upon which they are plotted does not of itself create an implied covenant on the part of the vendor that the size or shape of the remaining lots will not be changed. *Hickson* v. *Noroton Manor, Inc.,* 118 Conn. 180, 188. And there was no such radical change made as would defeat the whole plan of development, so that the law would imply a covenant to prevent the change. Id., 189, 190.

In case No. 21487, Brown et al. v. Reich et al., judgment may enter for the defendants.

In case No. 21531, Reich v. Thoennes et al., judgment may enter declaring that the restrictive clauses as to subdivision and sale of lots in the deed from Edward C. Thoennes to Benjamin Reich, dated October 1, 1952, recorded volume 81, pages 317, 318, of the Ansonia land records, and in the deed from Ed-

ward C. Thoennes to Benjamin Reich, dated May 27, 1953, recorded volume 81, pages 652, 653, of the Ansonia land records, have not been violated by the plaintiff and that he may convey the second piece, as described in the latter deed, without violating said restrictive clauses. No costs will be taxed in case No. 21531.