[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Under the First Count of her complaint, plaintiff seeks (1) damages, (2) an injunction "restraining defendant from continuing to violate the requirements of the recorded restrictive covenant pertaining to its land such that plaintiff's southerly view from her house remains unobstructed," and (3) an "order permitting plaintiff to enter upon defendant's land and cut or trim or remove offending vegetation so as to permit compliance with the restrictive covenant."
Said claims for relief under the First Count should be denied.
Under the Second Count of her complaint, plaintiff seeks (1) damages, and (2) an "injunction restraining defendant from permitting dogs which bark or howl to continue to occupy its premises."
Said claims for relief under the Second Count should be denied.
By deed executed on October 8, 1947, Ward A. Scranton, grantor, conveyed to Leslie and Hazel Latham certain property in Madison described as portions of Lots #1, #2, #3, and #4. In said deed, said grantor retained a portion of Lot #2 and he "for himself, his heirs, executors, administrators and assigns . . . covenants and agrees with the Grantees, and with their heirs and assigns, that no building will hereafter be erected, maintained, or permitted on the remaining portion of said Lot #2, as shown on said map, now owned by him and that no hedges, fences, or bushes will be permitted or maintained on the remaining portion of said Lot #2 which will unreasonably obstruct or interfere with the Southerly view over said Lot #2 from the dwelling house now located upon the above described property." Said retained portion of Lot #2 subject to said restriction is the subject property.
On October 11, 1984, defendant acquired property known as 113 Middlebeach Road, Madison, which contains within its boundaries the subject property. Defendant's deed states that "a portion of the premises is subject to the restrictions and conditions" in the Scranton/Latham deed.
On April 30, 1985, plaintiff acquired property known as 114 East Wharf Road, Madison. Plaintiff's deed states that said premises are conveyed "together with the rights and easements" described in said Scranton/Latham deed.
The subject property is at the northwest corner of a T intersection formed by Middlebeach Road and East Wharf Road.
Along its southerly border, the subject property is bounded CT Page 3516 by Middlebeach Road 72.5'; along this border, starting at the corner of said roads, there is an old stone wall running 35' and, starting at the end of said wall, there is an old hedge running 37.5'.
Along its westerly border is remaining property of defendant, 110', on which is located defendant's residence.
Along its northerly border is property of plaintiff, 70', on which is located defendant's residence.
Along its easterly border, the subject property is bounded by East Wharf Road, 96.25'; along this border, starting at its southeast corner, there is an old hedge running 76.25'; at the end of the hedge, said old stone wall runs 30' to the intersection of said roads.
Located, approximately in the center of the subject property, is an old, unused well which is surrounded by four bushes.
Located at the northeast corner of the subject property, 5' within the property line along East Wharf Road, is an old Maple tree approximately 55' tall.
The remainder of the subject property consists of relatively flat land covered by a well maintained lawn.
West of East Wharf Road and on the southerly side of Middlebeach Road, directly across from the subject property are residences and trees. These residences are waterfront properties on Long Island Sound. Immediately east of said waterfront properties diagonally from the southeast corner of the subject property, is the Madison town beach; there are several trees on town property immediately east of the entrance to the townbeach.
Approximately 480' south of plaintiff's land are the waters of the Sound.
Based on the evidence presented, the subject property is burdened by the restrictive covenant contained in the Scranton/Latham deed. It is the claim of the plaintiff that defendant has been in violation of said restrictive covenant for "at least one year" prior to December 18, 1989 because it ". . . has wrongfully obstructed and continues to obstruct plaintiff's southerly view from her dwelling house in that:
(a) It has permitted four bushes surrounding a well to grow unreasonably high
(b) It has permitted a maple tree on its property to have CT Page 3517 many branches which when full of leaves obstructs plaintiff's southerly view; and
(c) It has permitted a hedge along the border of its property to grow unreasonably high."
"Restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes, are to be narrowly construed and are not to be extended by implication. If their language is of doubtful meaning, it will be construed against rather than in favor of the covenant. Easterbrook v. Hebrew Ladies Orphan Society, 85 Conn. 289, 296. "`Restrictions, in the framing of which a subsequent purchaser has had no voice, ought to be so clear that by the acceptance of the deed that declares them he may reasonably be deemed to have understood and acceded to them' . . . The principal factors in determining the meaning and effect of a restrictive covenant are its language and the purpose it is intended to serve. `. . . it is always a question of the intention of the parties: . . . it must appear from the terms of the grant, or from the situation and surrounding circumstances, that it was the intention of the grantor in inserting the restriction to create a servitude or right which should inure to the benefit of the plaintiff's land, and should be annexed to it as an appurtenance.'" Rossini v. Freeman, 136 Conn. 321, 323,324; Katsoff v. Lucertini, 141 Conn. 74, 77, 48.
Clearly, the intention of the restriction based on the words used is to protect the southerly view of the water from plaintiff's house over the subject property. In pertinent part, said view is protected by the prohibition that ". . . no building will . . . be erected, maintained, or permitted . . . and that no hedges, fences, or bushes will be permitted or maintained . . . which will unreasonably obstruct or interfere with . . ." said view. Although trees are not mentioned in the language of the restriction, the purpose of the restriction would be frustrated were trees not included within the meaning of the restriction. Clearly a hedge may consist of trees.
Upon the evidence presented, including the court's view of the subject property and the environs, the court finds that the present size of the hedges on the border of the subject property and the present size of the four bushes surrounding the well do not unreasonably obstruct or interfere with the southerly view over the subject property from plaintiff's dwelling.
However, the court finds that said view is partially obstructed or interfered with by said Maple tree. By admission of the plaintiff, violation of said restriction because of said Maple tree has existed since April 30, 1985, when the plaintiff first occupied her premises. Since April 30, 1985, said tree has not CT Page 3518 been trimmed in any manner relevant to the claims made in this case.
Upon the evidence, defendant has proved by a fair preponderance of the evidence the allegations of its special defense under 52-575a of the General Statutes. This is an action to enforce a "recorded private restriction . . . pertaining to the use of privately owned land . . ." within the meaning of 52-575a; said statute is worded in the disjunctive and it does not apply only to restrictions on maps. Plaintiff has brought this action more than three years after she had actual knowledge of violation of said restriction because of the Maple tree.
As to the Second Count, the court finds that the plaintiff has failed to prove by a fair preponderance of the evidence the existence of a nuisance or violation of 22-363 of the General Statutes. Defendant keeps two dogs on its premises; said dogs are confined in an outdoor kennel. These dogs do bark as do other dogs in the immediate neighborhood. Although plaintiff testified that she made complaints to town officials about the barking, no action was taken by the town. Other than the plaintiff, no other witness testified that said dogs kept on defendant's property barked "during extended periods of the day and night and from day to day" as alleged.
Accordingly, judgment is hereby entered for defendant on each count.
RONALD J. FRACASSE, Judge