[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR TEMPORARY INJUNCTION
The plaintiffs are owners of numerous residential properties in a subdivision of Granby. They've brought an action for a temporary injunction against the defendant who is constructing a home with vinyl siding on a lot within the subdivision. The basis of the plaintiffs' claim is that the construction of his home violates a Declaration of Covenants, Restrictions, and Easements.
The plaintiffs have requested a temporary injunction ordering the defendant to remove the vinyl siding and to replace it with material that is either wood, brick, stone, or a combination of these materials.
The developer was an individual named J. Kirk McNaughton. He assigned his developer rights to the defendant in July of 1994. The plaintiffs residences are all sided with brick, wood, stone, or a combination thereof. The defendant is currently listing the property for sale.
(1)
The confusion arises in this case because of the language used in the Declaration. Article I, paragraph 2 provides in relevant part that "the exterior of all houses on the lot shall be wood, brick, stone, or a combination thereof." It seems clear at least to the court that "exterior" refers to siding to be used on a home and not to materials that would be used in roofs, windows, gutters, leaders etc. This is true because some of the materials mentioned in this paragraph ordinarily are not and in fact can't be used for roofs, gutters, windows, leaders etc.
The defendant argues that as an assignee of the developer there is no right to the relief the plaintiffs demand since Article 1X, paragraph 1 states: "These covenants and restriction shall not bind the Developer during the period that the subdivision is being developed. Upon final CT Page 7779 completion of this subdivision or upon the cessation of construction or sales, in said subdivision all the covenants and restrictions shall be complied with by Developer."
I do not accept the plaintiffs argument that the provisions of Article 1X paragraph 1 only were meant to apply to the original developer, Mr. McNaughton. A common sense reading of the declaration and especially of Article VII lead me to conclude that an assignee of the developer can enforce any rights or provisions in this document which accrue or resided in the original developer.
How should this declaration be interpreted and are the articles of the declaration, specifically Article I paragraph 2 and Article 1X paragraph 1 so contradictory that parole evidence should be taken or the declaration be regarded as unenforceable? That is the question presented by this request for an injunction.
It has been said that; "The primary rule of interpretation of such (i.e. restrictive) covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met, "Easterbrookv Hebrew Ladies Orphan Society, 85 Conn. 289, 295 (1912); BTHarris Corp. v. Bulova, BS Conn. 356, 361 (1949). These declarations are agreements or contracts between parties that run with the land so that a court should try to enforce the reasonable expectations of the parties by using common sense.
It is true that it has been said that: "Restrictive covenants, being in derogation of the common law right to use land for all lawful purposes are to be narrowly construed and are not be extended by implication. If their language is of doubtful meaning it will be construed against rather in favor of the covenant, Easterbrook v. Hebrew Ladies Orphan Society
supra, Rossini v. Freeman 136 Conn. 321, 323 (1943). But as the Rossini court said "it is always a question of the intention of the parties", Id. page 324 and a court shouldn't labor to find ambiguity when, reading the declaration or covenant as a whole, it is clear what the reasonable expectations of the parties were. CT Page 7780
A reading of this declaration indicates that several provisions were included that it was thought would protect property values and the esthetic quality of the neighborhood. That is made explicit in the second paragraph on the first page of the declaration. The homes to be constructed were to have a minimum square footage, restrictions on exterior building materials was mandated and "unsightly" conditions such as clothes lines, dog pens etc. must not be visible from the street. Storage sheds had to be approved even garbage cans and toys had to be maintained so as to not be visible from the street.
A variety of other restrictions on use of the property are set forth in the regulations and are concerned with property and esthetic values.
It seems to me that the provision in Article I, paragraph 2 had to do with an intent to foster these values; it is hard to imagine what other purpose this provision would have.
Reading Article 1, paragraph 2 and Article 1X paragraph 1 together the only sensible meaning is that vinyl siding could not be used by a developer or his or her assignee. The provisions of Article 1X paragraph 1 must be read as a common sense recognition of the fact that while a developer was constructing homes certain of the provisions of the declaration need not be complied with because to do so would make it difficult to conduct building activity. Thus despite Article II the developer need not be concerned with keeping structures being built neat in appearance. Site maintenance need not concern the developer nor the height of the lawn. The developer needn't worry about keeping garbage cans on the construction site. The developer under Article IV wouldn't have to worry about keeping vehicles on the property while construction was going on.
This is the only common sense reading of paragraph 1 of Article 1X since the last sentence of that paragraph reads:
 "Upon final completion of this subdivision or upon the cessation of construction or sales in said subdivision al the covenants and restrictions herein shall be complied with by the Developer."
The language in the previous sentence stating the CT Page 7781 restrictions and covenants in the declaration shall not bind the developer by the temporal context created by reading the two sentences together has to mean that the covenants and restrictions shall not apply because they would interfere with building activities. Any other reading would lead to absurd results. It would mean here that a developer could put up vinyl siding while he was constructing a house but once all construction was completed in the subdivision the developer would have to remove the vinyl siding and replace it with stone, brick or wood. This interpretation might mean the developer could put a swimming pool in the front yard of a house while development was going on and then when it was demanded the condition be removed could argue against being ordered to do so because the agreement is ambiguous. To interpret the agreement in such a way would be tantamount to allowing people who bought homes in this development to be unfairly mislead in their expectations as to what protection the Declaration afforded them.
I believe a reasonable construction of this declaration would be that the developer while constructing a home can not use vinyl siding. Any other interpretation I believe would lead to contradictory and absurd results misleading to people who have bought into this development knowing of the declaration.[1]
(2)
As stated in Culligan v. James Erskine Co. 7 CSCR 121,122 (1991) to obtain preliminary relief a plaintiff has to show protectable interests are at stake and that there is a reasonable certainty of success on the merits. The plaintiff must also show that unless injunctive relief is granted the plaintiff will suffer irreparable injury for which there is no adequate remedy at law.
I believe there is a reasonably certainty of success on the merits. I find that as the plaintiff's expert testified there will be a diminution in value of the real estate of 5% if vinyl siding is installed and is allowed to remain in place. The real estate appraiser was licensed and certified and appeared knowledgeable about the different types of siding and their relative appeal to prospective buyers. The defendant's expert is a realtor but not a certified appraiser. The plaintiff's expert testified that these homes were fine CT Page 7782 dwellings with a value in the $250,000 range. The defendant's expert said to remove the vinyl siding would cost $7500. The fluctuations of the real estate market are such and the difficulty of evaluating the loss to each property are such that I do not believe there is an adequate remedy at law.
Also the nature and importance of the aesthetic interest protected in the declaration are clear. The right to live in a home and community whose aesthetic quality is defined and supposedly protected by such as declaration are an intangible that should be protected and can't be compensated for by a remedy at law. Because a recognizable value can't be priced in the market place I'm not prepared to say it should not be protected or doesn't exist.
Finally Article VII of the agreement says that damages for breach of the declaration and covenants are not adequate compensation "but such breach or the continuation thereof may be enjoined or abated" by the developer or an owner. One could define this language as creating a contract right to injunctive relief but this is problematic if it is meant to suggest that a court would be bound to issue injunctive relief. However, it seems to me that given this language the developer or an owner who violated the covenant might very well be held to be estopped from contesting the irreparable component requirement of injunctive relief because of this language.
The defendant also raises the doctrine of comparative harm as an argument to have the court deny injunctive relief. It cites Bauby v. Vivasow 107 Conn. 109 (1927) and Moore v.Serafin 163 Conn. 1 (1972) As Bauby
makes clear whether an injunction should issue depends on weighing the equities between the parties. An injunction should not lie if "there has been an innocent mistake or a bona fide claim of right on the part of the defendant . . . or where the conduct of the defendant was not wilful and inexcusable, and where the granting of the injunction would cause damage to a defendant greatly disproportionate to the injury which of which the plaintiff complains and it appears damages will adequately compensate the latter, Id. pp. 115-116.
I do not believe from the testimony I heard that the damage that will be caused to the defendant is greatly CT Page 7783 disproportionate to the plaintiff's injury. I also do not believe that in this case money damages will adequately compensate the plaintiffs for all their harm. The construction of the house with vinyl siding was not done I'm sure with evil motive but was done intentionally and violative of an agreement the developer entered into.
Also given the language in Article VII declaring damages may not adequately compensate a complaining party claiming the covenant has been violated and inviting injunctive relief, it ill suits the defendant to come now into court and argue a comparative injury theory. A cursory review of the facts inMoore v. Serafin supra also indicate that it has no bearing on this case. In Moore the trial court denied injunctive relief where the plaintiff delayed in complaining and offered no evidence of loss if relief wasn't given. Also granting the injunctive relief might have seriously affected the health of the 77-year-old defendant — removal of a mausoleum in a cemetery was the issue before the court. In fact as it became before the court the plaintiff didn't even contest the trial court's denial of injunctive relief against the elderly widow but pressed its claim to a right to seek injunctive relief against the cemetery association to prevent it from constructing such mausoleums in the future.
In any event I do not believe the doctrine of comparative injury should bar injunctive relief. I will grant the temporary injunction requested and order that the vinyl siding be removed to be replaced with the siding referred to in the declaration. Also the defendant's motion to discharge the lis pendens is denied in light of the above opinion. I will not rule on the claim for costs and attorney's fees at this time but that matter can be set down for further hearing.
Corradino, J.