This action was commenced by First Savings of Louisiana, FSA ("First Savings"), and 48 individuals comprising the majority of the property owners in a subdivision development in Montgomery County, Alabama, against Hugh V. Smith, Jr., the original developer of the subdivision.
Challenging the trial court's rejection of his "covenants running with the land" argument, on which rejection the trial court based its summary judgment for the plaintiffs, Smith appeals. Because we hold that the covenants in issue, by their very nature, are personal and are not covenants running with the land, despite being explicitly characterized as the latter, we affirm.
During the early 1970's, defendant Hugh V. Smith, Jr., a Montgomery, Alabama, lawyer and real estate developer, was involved in the promotion, construction, development, and sale of a subdivision development known as Rolling Hills Golf And Racquet Club Plat No. 1 ("Rolling Hills"). (Although it is now known as "Oak Hills," the development will be referred to in this opinion as "Rolling Hills," as it was originally named.) Smith was the owner and principal developer of Rolling Hills during the initial promotion and development of the subdivision, which included a golf course, a tennis complex, and a country club.
On April 8, 1975, Smith and his wife recorded in the Montgomery County Probate Court a document containing covenants, easements, and restrictions pertaining to the Rolling Hills plat. Paragraph 10 of the recorded document, entitled "ARCHITECTURAL CONTROL," set out the guidelines for building construction and land use within the subdivision. Each guideline within Paragraph 10 specifically referred to an Architectural Control Committee as the authority for approving and disapproving actions authorized and governed by Paragraph 10. Paragraph 11 of the document reads: "MEMBERSHIP: The Architectural Control Committee is composed of Hugh V. Smith, Jr., or his designated representative."
Paragraph 12, "PROCEDURE," provides:
 "The [Architectural Control] Committee's approval or disapproval as required in these covenants shall be in writing. Should the committee, or his designated representative, fail to approve or disapprove such plan, design, and location within thirty (30) days after such plans *Page 1035 
and specifications have been submitted to him, or his representative, or, in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, then such approval shall not be required, and the plans, specifications and plot plan shall be deemed to have been approved. However, all other covenants herein contained shall remain in full force and effect."
The introductory paragraph to a section of the document entitled "RESTRICTIONS" expressly states that the provisions contained therein are "to run with the land" and are to be binding on all parties for 25 years from the date of recording. According to the document, the initial 25-year period is to be followed by automatic extensions of the restrictions and covenants for successive 10-year periods "unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part."
In 1985 Smith and his wife divested themselves of their remaining proprietary and pecuniary interests in any of the real property located within Rolling Hills. The unsold and undeveloped portion of the Rolling Hills subdivision has been since owned by several developers, whose ownership, in every instance, has resulted from a foreclosure sale (including the sale of Smith's final interest in the property when Rolling Hills was sold to Linton Road Company, Inc., in 1985, as well as the 1987 sale that gave First Savings its current ownership).
In September 1988, First Savings requested that Smith designate a successor to himself as the sole member of the Architectural Control Committee, because, although Smith no longer held any right, title, or interest in any of the Rolling Hills property, he was able to "dictate" the way in which the owners of Rolling Hills property could use and enjoy their property. Further, said First Savings, Smith's divesting himself of any pecuniary or proprietary interest in the Rolling Hills property was a "significant change in circumstances" that would allow a revision of the plat restriction concerning membership on the Rolling Hills Architectural Control Committee.
Smith refused to vacate his position as sole member of the Architectural Control Committee or to designate a successor, claiming (1) that he had fully performed all the duties and responsibilities required of him as sole member of the Architectural Control Committee; (2) that there was no obligation upon him to name a successor as the Architectural Control Committee; and (3) that the provision making him the sole member of the Architectural Control Committee was a covenant "running with the land," and was not a personal covenant.
Upon Smith's refusal, First Savings notified all Rolling Hills property owners that a public meeting would be held to discuss Smith's removal as the sole member of the Architectural Control Committee. At that meeting, a majority of the Rolling Hills property owners signed a petition approving the amendment of the Rolling Hills plat covenants and restrictions so as to allow resident Rolling Hills property owners to elect an Architectural Control Committee, and they agreed to begin the instant litigation. First Savings and a majority of the owners of developed lots in Rolling Hills filed a complaint for equitable and declaratory relief.
In Count I of their complaint, the plaintiffs alleged that Smith had relinquished all right, title, and interest in Rolling Hills; that, as the sole member of the Architectural Control Committee, Smith had performed the duties of that committee only on "isolated and rare instances"; that the plaintiffs were in need of a "regular participating entity who owns property in [Rolling Hills] to conduct the Architectural Control Committee"; and that Smith had refused to relinquish control of the committee or to name a successor to the committee. The plaintiffs then asked the trial court toreform the Rolling Hills restrictions and covenants so as to allow the creation of an Architectural Control Committee comprised of the present owners of Rolling Hills property.
In Count II of their complaint, the plaintiffs contended that Smith's control of the *Page 1036 
Architectural Control Committee amounted to a restriction "against the free use and enjoyment" of their property. The plaintiffs further claimed that the provision establishing Smith as the sole member of the Architectural Control Committee was a personal covenant and thus not a covenant "running with the land." The plaintiffs then stated that as a result of Smith's relinquishing his interest in Rolling Hills while retaining control of the Architectural Control Committee, the plaintiffs were "in doubt as to the applicability" of the plat restriction establishing the membership of the Architectural Control Committee. Based on these allegations, the plaintiffs asked essentially that the trial court declare covenant number 11 (membership of the Architectural Control Committee) to be a personal covenant between Smith and his immediate grantees and not a covenant running with the land.
In his answer, Smith controverted the affirmative allegations made in the complaint, raised various affirmative defenses, and asserted a counterclaim for recognition of a particular property interest in Rolling Hills or, alternatively, for monetary damages for First Savings' refusal to honor that interest. Both Smith and the plaintiffs moved for summary judgment. The trial court granted the plaintiffs' motion for summary judgment, both as to their complaint and as to Smith's counterclaim, and entered a final judgment against Smith. Smith appeals.
 Issue I
Smith first argues that the circuit court lacked jurisdiction to hear and decide the plaintiffs' claims, because the plaintiffs, says Smith, failed to follow the procedure set out in Ala. Code 1975, § 35-2-53, and because the plaintiffs "apparently" incorrectly relied on § 35-2-58 as the authority for their claims. We find, however, that neither § 35-2-58
("Vacation and annulment of map or plat, etc., by circuit court — Jurisdiction; parties") nor § 35-2-53 ("Vacation of plat or map by owner of lands") is applicable to the instant case.
Indeed, unlike the plaintiffs in the cases cited by Smith in support of his contention that the trial court lacked jurisdiction, the plaintiffs in this case do not seek to vacate or annul the plat establishing Rolling Hills or any portion of the plat as it relates to and controls the legal description and physical maintenance of the subdivision. Rather, the instant litigation was brought for "equitable and declaratory relief" in the form of the trial court's construction, interpretation, application, and, if necessary,amendment of one provision relating to the membership of the Rolling Hills Architectural Control Committee. We hold, therefore, that the circuit court had jurisdiction of the plaintiffs' claims.
 Issue II
Smith also contends that the summary judgment for the plaintiffs was improper because, he says, the plaintiffs produced no testimony or evidence to controvert the affidavits submitted by Smith in support of his motion for summary judgment. In those affidavits, four Rolling Hills lot owners stated that Smith had satisfactorily performed all of the required duties and obligations of the Architectural Control Committee and that they wished for Smith to remain in the position of sole member of that committee.
We find, however, that whether the testimony contained in those affidavits is controverted or not is of no significance to the issue of the propriety of the summary judgment. The affidavit testimony regarding Smith's performance as sole member of the Architectural Control Committee has no relevance to the plaintiffs' motion for summary judgment, which was based upon reasons for replacing Smith other than his performance. The plaintiffs raised no issue as to whether Smith had properly carried out the function of the Architectural Control Committee. Rather, the plaintiffs based their contention of the impropriety of Smith's remaining in control of the Architectural Control Committee after a significant change in circumstances (i.e., Smith's divesting himself of any right, title, and interest in the Rolling Hills realty) that, the *Page 1037 
plaintiffs allege, made Smith's continued control of the use and development of Rolling Hills a violation of both public policy and the plaintiffs' rights to freely use and enjoy their own property.
 Issue III
Smith next contends that the express language of the Rolling Hills plat requires that no amendment of the plat take place until the expiration of 25 years from the date of the recording (April 8, 1975), and that this time restriction is automatically extended for successive 10-year periods after the expiration of the first 25-year period unless a majority of the Rolling Hills owners, during one of the 10-year periods, agrees to a change in the covenants and restrictions. Smith concludes by pointing out case law that, according to his contention, supports the validity of the challenged restrictive covenant. See, e.g., Hill v. Rice, 505 So.2d 382 (Ala. 1987); and White v.Lewis, 253 Ark. 476, 487 S.W.2d 615 (1972).
The facts of the instant case, however, present a novel question, the precise answer to which does not appear in our case law: Does the established law of covenants and restrictions apply where, as here, the change sought to be made relates solely to the propriety of the membership of a subdivision's architectural control committee (where such a change in membership would not affect a tangible or physical attribute of the real property described and controlled by the recorded plat) and the possible replacement of a member thereof, who no longer retains any interest in the subdivision?
In answer to this question, we set out the holding of the trial court, in pertinent part:
 "This case comes before the court on cross motions for summary judgment, . . . with respect to the continued occupancy by the defendant, Hugh V. Smith, Jr., of the Architectural Control Committee, as same pertains to the following described real property:
 "[Here appears a legal description of the Rolling Hills subdivision.]
 "The plaintiffs claim that the defendant has no proprietary or pecuniary interest in the subdivision and for that reason [that] they are entitled, as a matter of law, to have [the defendant] removed as the sole comprising member of the Committee. The court, having heard oral argument by counsel for the parties, and further having reviewed precedent cited to the court, together with the defendant's answers to the plaintiffs' first interrogatories, is of the opinion and hereby finds that the defendant, Hugh V. Smith, Jr., indeed holds no proprietary or pecuniary interest in the [Rolling Hills] subdivision.
 "The court further finds, on the authority of LeBlanc v. Palmisano, 43 So.2d 263
(La.Ct.App. 1949); and Pulver v. Mascolo, 155 Conn. 644, 237 A.2d 97 (1967), that the language of the covenant in question and reason compel the court to conclude that the defendant's right to remain on the Architectural Control Committee and to exercise the duties and obligations therewith have been forfeited. Thus, the court finds, as a matter of law, in favor of the plaintiffs on their motion for summary judgment on the primary issue.
". . . .
 "The defendant maintains in his counterclaim that he and certain other individuals were granted lifetime memberships to the Rolling Hills Golf Raquet Club. The court has examined the agreements alleged to have created the lifetime memberships and determines that said memberships may have been valid and enforceable as to the then owner and operator of the Golf Raquet Club at the time the agreements were executed. However, on the authority of Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1970), [the court holds that] the agreements were . . . personal covenants which ceased to exist once the owner or operator lost his interest in the Country Club and [that they] do not run with the land. Thus, the court further finds in favor of the plaintiffs with respect to their motion for summary judgment as to the defendant's counterclaim. *Page 1038 
". . . .
"DONE this 23rd day of January, 1990.
 "/s/ Charles Price ----------------- "Circuit Judge"
We find no basis for reversal of the trial court's judgment on these issues. See, also, Boyle v. Lake Forest PropertyOwners Association, Inc., 538 F. Supp. 765 (S.D. Ala. 1982); andLaney v. Early, 292 Ala. 227, 292 So.2d 103 (1974) (and the cases cited therein).
 Issue IV
Not specifically addressed in the trial court's judgment is Smith's assertion of the affirmative defenses of waiver, laches, estoppel, and the applicable statute of limitations. Smith claims that the equitable doctrines of waiver and laches defeat the plaintiffs' claim because the plaintiffs delayed 14 years before bringing this action for Smith's removal as sole member of the Architectural Control Committee. Further, says Smith, under Ala. Code 1975, § 6-2-34(6) ("Actions for the use and occupation of land"), the plaintiffs' action is barred by the applicable six-year statute of limitations.
We hold that the facts of the instant case do not invoke the application of § 6-2-34(6), and that the doctrine of laches does not bar this action, because Smith has not shown that the delay in bringing this action resulted in any prejudice to him. See Darden v. Meadows, 259 Ala. 676, 68 So.2d 709 (1953).
Because we find no basis for reversal, the judgment of the trial court is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS and HOUSTON, JJ., concur.