This case involves a covenant restricting the use of certain property owned by Patsy S. Miller in Orange Beach. Miller claims that the covenant should not be enforced against her property. Following a bench trial, the trial court entered a judgment against Miller. We affirm.
In 1967, Associated Gulf Land Corporation ("AGLC") purchased large tracts of land located in what is now the municipality of Orange Beach. Included in one of those tracts is the property now owned by Miller and four adjoining lots situated immediately to the west of the Miller property. The Miller property fronts Alabama Highway 182, and it is approximately 75 feet wide and 300 feet deep.
In 1977, AGLC sold what is now the Miller property to Jerry M. Gilbreath. In 1979, Gilbreath sold the property to William F. Long. Sometime before 1988, a house was constructed on the property. In 1988, Long sold the property and the house located thereon to Patsy Miller and her husband, Larry Miller. At the time the Millers purchased the subject property, they already owned a house nearby, but on the other side of Highway 182; there was testimony that the Millers purchased the subject property because of the existence and ongoing construction of condominiums on the south side of Highway 182 in the vicinity. In 1996, Larry Miller conveyed his interest in the property to Patsy Miller, who is now the sole owner of the property.
The dispute arises from the following language in the deed from AGLC conveying the subject property to Gilbreath:
 "The Grantor hereby expressly restricts the use of said real estate by the Grantees, their heirs and assigns to the extenet [sic] that said real estate shall be used only for residential purposes and shall *Page 984 
never be used for a trailer park or any other commercial purpose. The burden of this restrictive covenant shall run with said lands, and shall be binding upon the Grantees and their heirs and assigns; provided, however, the benefit of this restrictive covenant is and shall be personal to the Grantor, its successors and assigns, and is a personal covenant which shall not run with any other lands conveyed by Grantor to others."
This restriction was reiterated in the subsequent deeds conveying the property. Miller concedes that she was aware of the "Deed Restriction," as she terms it, when she and her husband purchased the property in 1988.
At the time the Millers purchased their property, the four adjoining lots were also limited to residential use, and only one even had a house on it. The adjoining lots (1) had all been owned by AGLC, (2) were approximately the same size as Miller's property, and (3) were all subject to a restrictive covenant similar to the one quoted above. Beginning in 1995, AGLC released the adjoining lots from the covenant in return for consideration from the owners of those lots.
As a result of AGLC's release of the four adjoining lots from the covenant, Miller's immediate neighbors to the west are now two restaurants doing business as "Bubba's Seafood" and "Jake's Steakhouse," and the parking lots for those businesses. In addition, a theme park doing business as "Adventure Island" is now located immediately to the west of those two restaurants, although the testimony at trial indicated that AGLC played no role in enabling the theme park to be located and operated on that site. In addition, a high-rise "Holiday Inn" hotel and a business known as "Souvenir City" are located across Highway 182 from Miller's property. It is not clear when the Holiday Inn was constructed, and it is not clear from the record that AGLC played any role in enabling the Holiday Inn or Souvenir City to be located where they are. Furthermore, the road that all of these properties face, Alabama Highway 182, has been widened from two lanes at the time of the Millers' purchase to five lanes today. AGLC continues to own land in the general area of the Miller property, including approximately 24 acres of undeveloped land immediately to the north and east of, and contiguous with, Miller's property and the adjoining lots.
In July 2002, Miller filed a "Complaint for Declaratory and Equitable Relief against AGLC pursuant to Ala. Code 1975, §6-6-220 et seq. She alleged that she had requested that AGLC release her property from the covenant at issue but that AGLC had refused to do so. Miller also alleged that the covenant was personal to AGLC and Gilbreath and was therefore not enforceable against her. Further, she alleged that her property was no longer suitable for residential use and that continued enforcement of the restrictive covenant would "impose an undue hardship and would be inequitable in light of the development of the surrounding property for commercial purposes." Miller requested that the trial court declare the restrictive covenant unenforceable.
In October 2003, the trial court conducted an ore tenus proceeding. In January 2004, it entered a judgment in favor of AGLC. Miller appealed to this court. We transferred the case to the Alabama Supreme Court for lack of subject-matter jurisdiction. The Supreme Court deflected the case to this court, pursuant to § 12-2-7, Ala. Code 1975.
 "'We note that under the ore tenus standard of review, the trial court's findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of *Page 985 
correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong. The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence. The reason for giving such deference to the trial judge's findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses' manner and demeanor and has the better opportunity to pass upon the credibility of their testimony.'
 "Ex parte Pielach, 681 So.2d 154, 154-55
(Ala. 1996) (citations omitted). `Under the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness and will not be reversed unless found to be plainly and palpably wrong.' Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala. 1992) (citations and internal quotation marks omitted)."
Creel v. Crim, 812 So.2d 1259, 1260-61 (Ala.Civ.App. 2001).
 I.
On appeal, Miller first argues that the deed restriction at issue was personal to AGLC and Gilbreath, i.e., that the burden imposed by that restriction does not "run with the land" so as to be binding upon her.
In order for a covenant to be enforced as one that "runs with the land," it must both (1) have been intended by the parties creating it to run with the land and (2) touch and concern the land. See, e.g., Allen v. Axford, 285 Ala. 251,231 So.2d 122 (1970); Smith v. First Sav. of Louisiana,FSA, 575 So.2d 1033 (Ala. 1991); Patterson v. AtlanticCoast Line R. Co., 202 Ala. 583, 589, 81 So. 85, 91 (1919) (noting that, in keeping with the seminal English case known as "Spencer's case" (5 Coke, 16), "a covenant will not run with the land if it be merely collateral, and doth not touch or concern the thing demised").[1] In discussing these requirements, we find it convenient to utilize the following definitions stated in the Restatement (Third) of Property (Servitudes) § 1.5 (2004):
 "(1) `Appurtenant' means that the rights or obligations of a servitude are tied to ownership or occupancy of a particular unit or parcel of land. The right to enjoyment of an easement or profit, or to receive the performance of a covenant that can be held only by the owner *Page 986 
or occupier of a particular unit or parcel, is an appurtenant benefit. A burden that obligates the owner or occupier of a particular unit or parcel in that person's capacity as owner or occupier is an appurtenant burden.
 "(2) `In gross' means that the benefit or burden of a servitude is not tied to ownership or occupancy of a particular unit or parcel of land.
 "(3) `Personal' means that a servitude benefit or burden is not transferable and does not run with land. Whether appurtenant or in gross, a servitude benefit or burden may be personal."
Turning first to the requirement that the covenant have been intended by the parties creating it to run with the land, we observe that the deed from AGLC to Gilbreath expressly addresses this issue, First, as to the burden of the covenant, the deed restricts the use of what is now the Miller property "by the Grantees, their heirs and assigns." Further, it specifically provides that the burdened property ("the servient estate") shall "never be used for a trailer park or any other commercial purpose." (Emphasis added.) Even plainer and more to the point, the deed expressly states that "the burden of this restrictive covenant shall run withsaid lands and shall be binding on the grantees, their heirs and assigns." (Emphasis added.)
While the deed from AGLC to Gilbreath clearly expresses an intention for the burden of the covenant to run with the servient estate, it appears to express the contrary intention as to the benefit of the covenant, namely, that it be "personal" to AGLC. The deed states that "[t]he benefit of this restrictive covenant is and shall be personal to the Grantor, its successors and assigns, and it is a personal covenant which shall not run with any other lands conveyed by Grantor to others."[2] We note that the word "personal" in the first clause of the quoted sentence may be read consistently with both the above-quoted definition and with the declaration of the second clause of the quoted sentence, i.e., as an expression of the parties' intention that the benefit of the covenant not "run" with any of the land that, although retained by the covenantee (AGLC) at the time of the creation of the covenant, is subsequently conveyed by the covenantee to a third party.
We are cited to no authority, and we know of none, that an expression of intention by the parties creating a covenant that the burden of that covenant run with the servient estate is ineffective where the parties simultaneously express an intention that the benefit of the covenant merely be "personal" to the covenantee. As to the ultimate question of whether, aside from the intention of the parties, a covenant will be actually enforced as one that runs with the land, we likewise are cited to no authority for the proposition that the burden of the covenant may not run with the servient estate unless the benefit of the covenant also runs with some benefited land.
We recognize that there does exist a division of authority in other jurisdictions as to whether the burden of a covenant may run with a servient estate when the benefit of the covenant is held in gross. See 9 Richard R. Powell, Powellon Real Property 60.043a., notes 48 and 49 (2004), and accompanying text. While Powell on Real Property, like many published opinions, appears in § 60.043a. to use the *Page 987 
terms "personal" and "in gross" interchangeably rather than as defined above, the authorities cited by Powell on RealProperty to illustrate the division of authority appear to concern the question whether a covenantee can enforce a covenant even when the covenantee owns no land to which the benefits of that covenant attach either by the terms of the covenant or as a practical matter (i.e., when the benefit of the covenant is held "in gross"). See id.
That, however, is not the case presented here. AGLC continues to own a substantial amount of the land that it owned at the time it created the covenant, including particularly the 24-acre tract contiguous with the Miller property. This is land to which the trial court could have found the benefit of the covenant to attach.[3]
We turn now to the requirement that a covenant, in order to be enforced as one that runs with the land, must be one that "touches and concerns the land." We first observe that the deed between AGLC and Gilbreath creating the covenant clearly places the burden of the covenant upon the land in question, not the grantee. More importantly, the very nature of the burden is one that obviously touches and concerns the servient estate conveyed by that deed.
On the other hand, the relationship between the covenant and some benefited land finds no expression in the deed itself. Nonetheless, AGLC argues and points to evidence indicating that the covenant has the necessary tie to neighboring land owned by AGLC because, as a practical matter, it does in fact benefit that land, particularly the 24 acres owned by AGLC and lying immediately to the north and east of the Miller property. Specifically, the president of AGLC, John Pilcher, Jr., testified, and AGLC now argues, that the covenant allows AGLC to control the nature and timing of any nonresidential use of the servient estate and thereby enhances the potential for use and enjoyment of the AGLC property. While a different conclusion might have been reached by the trial court had it weighed the evidence differently, we cannot say that the trial court was plainly wrong to agree with AGLC's view of the evidence in this regard.
 II.
Miller also argues that, even if the burden of the restrictive covenant would otherwise normally be deemed to run with the Miller property, it ought not, in equity, be allowed to do so under the particular facts of this case. Miller seeks to rely upon both the so-called "change-of-conditions" *Page 988 
test and the so-called "relative-hardship" test.See generally Lange v. Scofield, 567 So.2d 1299
(Ala. 1990), and Johnson v. H.J. Realty, 698 So.2d 781
(Ala.Civ.App. 1997).
Citing Laney v. Early, 292 Ala. 227, 292 So.2d 103
(1974), AGLC responds that any consideration of the change of conditions must focus on the original purpose of the covenant. In Laney, the Supreme Court explained that
 "'[a] change in character of the neighborhood sufficient to defeat a restrictive covenant must have been so great as to clearly neutralize the benefits of the restriction to the point of defeating the object and purpose of the covenant.'"
292 Ala. at 233, 292 So.2d at 108 (quoting Thompson onReal Property, § 3174, 1962 Replacement Volume (1972 Supplement)). The Court applied this principle to a subdivision that had been divided by the construction of an interstate highway:
 "Construction of 1-59 may separate one part of the subdivision from another area, it may detract from the aesthetic appearance of some lots within the subdivision, and it may depress the value of some lots, but it does not neutralize the essential purpose of the restrictions, because the subdivision remains utilized exclusively for residential purposes. . . . In and of itself, the Interstate does not defeat the purpose of the restrictions."
Laney, 292 Ala. at 232-33, 292 So.2d at 108.
While there was some testimony from which the trial court in this case might have drawn a contrary inference, Pilcher testified repeatedly that the purpose of the covenant in question was not to ensure a residential neighborhood for what is now the Miller property or for the four adjoining lots lying to the west of it, but was instead to protect the balance of the AGLC-held property in the area. Specifically, he testified, without objection, that the purpose of the covenant was to benefit the 24 acres owned by AGLC by enabling AGLC to control the type and timing of any commercial development that might occur on the Miller property. The trial court could have found Pilcher's testimony credible in this regard and could have elected to assign it significant weight in its judgment. While it may be that if the trial court had chosen to weigh the evidence before it differently, it could have come to a contrary conclusion, we certainly cannot say that the record, including particularly Pilcher's testimony, does not provide substantial evidence to support the apparent conclusion by the trial court that the "object and purpose" of the covenant can still be fulfilled.
Finally, we turn to the "relative-hardship" test. Under this test, "`a covenant will not be enforced if to do so would harm one landowner without substantially benefitting another landowner.'" Johnson v. H.J. Realty,698 So.2d at 782 (quoting Lange, 567 So.2d at 1302). In Langev. Scofield, 567 So.2d at 1302, the Supreme Court explained that it had at least "implicitly" approved the use of that test in such cases as Laney, 292 Ala. at 233,292 So.2d at 109, and Allen, 285 Ala. at 259,231 So.2d at 129. The Supreme Court continued:
 "The factors to be considered in applying this test are well stated in 20 Am. Jur.2d Covenants, Conditions, Restrictions § 313, at 876-77 (1965):
 "'Broadly speaking, the enforcement of building restrictions is governed by equitable principles, and will not be decreed if, under the facts of the particular case, it would be inequitable and unjust. . . . The complainant's right to insist on the restrictive *Page 989 
covenant must be clear and satisfactory. . . .
 `"The equitable enforcement of a restriction can be invoked only for the purpose of protecting the benefit which it was the object of the covenant to afford. If the restrictive covenant has ceased to have any beneficial or substantial value to the . . . property, it can form no ground for equitable relief. . . . [I]f the defendant will be subject to great hardship or the consequences would be inequitable, relief will be denied.'"
Lange v. Scofield, 567 So.2d at 1302.
In the context of the deference owed to the trial court's assessment of the equities in a case such as this, we note that the trial court here could have found that the equities do not so disproportionately disfavor Miller as they did the owners of the burdened properties in Lange andJohnson. In both of those cases, the burdened land would have been virtually unuseable if the restrictive covenants had not been lifted. Moreover, there was evidence in both of those cases from which the trial court could have concluded that the lifting of the covenant would not diminish the value or use of the neighboring property. In addition, we find it appropriate to emphasize that both the Supreme Court and this court in those cases merely affirmed a fact-intense, balancing-of-the-equities determination made by the trial courts in those cases.
In the present case, we are being called upon by the owner of the burdened land to reverse a fact-intense, balancing-of-the-equities judgment reached by the trial court. Foremost among the factors the trial court could have weighed in favor of AGLC in this regard is the fact, as discussed above, that continuing to allow AGLC to control the nature or extent of any release of the covenant would benefit AGLC in its use and enjoyment of its contiguous 24 acres, particularly the portion thereof lying closest to the Miller property. We cannot say that the trial court's implicit finding that the covenant continues to substantially benefit AGLC's land is plainly and palpably wrong.
We also note that, in assessing the equitableness of continuing to enforce the covenant, the trial court could have been influenced by the following: while a business known as Souvenir City is located directly across from the Miller property, the record indicates that a predecessor business of some nature was situated in the same location at least as early as the time at which the Millers bought their property, if not at the time the covenant was created; there was ongoing condominium development on the south side of Highway 182 at the time the Millers purchased the subject property; the record is not clear as to what role, if any, AGLC played in permitting the Holiday Inn to be located on the southern side of the highway; the evidence was undisputed that AGLC played no role in enabling the theme park located to the west of the adjoining properties to be constructed and operated on that site; both Gilbreath and, later, the Millers purchased the subject property knowing of the nature of the deed restriction and therefore at least constructively knowing (1) that nothing would prevent AGLC, if it ever chose to do so, from completely releasing that restriction as to any or all of the four lots lying immediately to the west of the Miller property and (2) that no similar residential restriction existed with respect to the 24 acres of AGLC property lying immediately to the north and east of the Miller property; Miller no longer utilizes the property as her personal residence and she introduced no evidence of its value as a rental property; after initially receiving an indication that a complete release of the covenant by AGLC would result in the construction and operation of a car wash on the Miller property, Pilcher repeatedly requested *Page 990 
information as to what use Miller sought to put the property, but those requests were consistently met with requests by Miller simply for a complete and unconditional release; Pilcher testified that in recent years AGLC has tailored the relief it has provided from similar restrictive covenants on other property so as to accommodate what both parties considered to be reasonable uses of the property; and Pilcher testified that AGLC was not interested in continuing to restrict the use of the Miller property strictly to single-family residential use and, in response to requests by Miller to release the covenant, had repeatedly indicated that it would consider doing so for a reasonable commercial use that would not harm the value of its neighboring property. The trial court also could have concluded that the Millers were experienced in real estate matters, having bought and/or sold several residential and commercial properties in or near what is now Orange Beach during the last two decades, including a lot intended for commercial use that is situated north of Highway 182, closer to Gulf Shores.
While the evidence (including substantial testimony from both Mr. and Mrs. Miller) might have been weighed differently by the trial court and, had that occurred, the trial court might have reached a different outcome, that is not the basis upon which we must assess the trial court's judgment. It was within the province of the trial court to consider the credibility of the witnesses, to draw reasonable inferences from their testimony and from the documentary evidence introduced at trial, and to assign such weight to various aspects of the evidence as it reasonably may have deemed appropriate. Accordingly, our response to Miller's well-made "relative-hardship" argument necessarily is controlled by the presumption that the trial court made the findings necessary to support its judgment,Transamerica Commercial Finance Corp. v. AmSouth Bank,N.A., 608 So.2d 375, 378 (Ala. 1992), and the concomitant presumption in favor of those findings to the extent they were based on evidence received ore tenus. In order to reverse the trial court on the basis of the relative-hardship test, we would have to make our own credibility determinations and we would have to reweigh the evidence, neither of which we are allowed to do.
Miller's complaint does not seek a modification of the covenant in a way that might accommodate the reasonable interests of both parties. Instead, it simply seeks to have the covenant lifted and thereby enable Miller to put her property to any commercial use whatsoever. We believe the trial court's judgment against Miller and in favor of AGLC is supported by both the particular facts presented and the law. Accordingly, that judgment is due to be affirmed.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
BRYAN, J., concurs in the result, without writing.
[1] One commentator notes that the traditional requirements for a restrictive covenant to "run with the land" at law are (1) that the covenant must "touch and concern" the land, (2) that the parties must intend the covenant to run with the land, and (3) that there must be privity of estate, and that the traditional requirements for a restrictive covenant to "run with the land" in equity are (1) that the covenant must "touch and concern" the land, (2) that the parties must intend the covenant to run with the land, and (3) that the successor to the "burden" must have notice of the covenant. See 9 Richard R. Powell, Powell on Real Property § 60.042 (2004) (discussing the requirements and noting the merger of law and equity). We note that, as a practical matter, instruments creating covenants commonly do notexpress whether the parties intended the covenant to run with the land. Accordingly, the fact that a covenant does in fact touch and concern the land often is seen as the best available evidence of the parties' intention that the covenant run with the land. See, e.g., Allen v. Axford,285 Ala. 251, 231 So.2d 122 (1970).
The benefit or burden of a covenant "touches and concerns" the benefited land or the burdened land when it affects the value of that land (Callahan v. Weiland, 291 Ala. 183,279 So.2d 451 (1973)) or, in the view of the Restatement (First)of Property, affects the "physical use and enjoyment" of the land (Restatement (First) of Property § 537).
[2] Alternatively, given the fact that AGLC is a corporation with an indefinite existence, it might be said that the language in the AGLCGilbreath deed would be consistent with a finding that the parties intended the benefit of the covenant "to run," so to speak, with the benefited land so long as, and to the extent that, that land remains in the hands of AGLC.
[3] The Restatement (First) of Property takes the position that a burden may not run with a servient estate unless the performance of the covenant by the owner of the servient estate "will benefit the promisee or other beneficiary of the promise in the physical use or enjoyment of the land possessed by him, . . . and the burden on the land of the promisor bears a reasonable relation to the benefit received by the person benefited." Restatement (First) of Property § 537. Nothing in the Restatement appears to require that the benefit of the covenant run with the benefited land, or even be formally tied to it in the language of the covenant, in order for the covenantee to be able to enforce the covenant for so long as the covenantee continues to own the benefited land. The comments to § 537 merely discuss the "social interest in the utilization of land" and explain, among other things, that "[u]nless a burden has some compensating advantage which prevents it from being on the whole a deterrent to land use and development, the running of the promise by which it was created is not permitted." As discussed in more detail, infra, the trial court could have found that the 24-acre tract retained by AGLC and lying adjacent to the Miller property is land to which the "compensating advantage" of the covenant attaches in the present case.