DONALDSON, Judge.
Harold Lancaster and Candy Lancaster appeal from a summary judgment of the Tallapoosa Circuit Court (“the trial court”) denying their claim- seeking an injunction against Walter S. Evans and Traci E. Evans. The Lancasters alleged that the Ev-anses had violated restrictive covenants applicable to certain property by building a boathouse (“the boathouse”)[1] and by planting trees and erecting a sign in the border area between the parties’ properties. The trial court entered a summary judgment in favor of the'Evanses, finding that the boathouse was built on a third party’s property and that a latent ambiguity existed in the restrictive covenants preventing enforcement of the covenants in the manner requested by the Lancasters.
We hold that the Evanses’ construction of the boathouse was subject to the restrictive covenants because the provisions of the restrictive covenants regarding boathouses touched and concerned the Ev-anses’ property.: We also hold that the restrictive covenants prohibited the boathouse built by the Evanses. However, the Lancasters waived on .appeal any issue regarding the planting of the trees and the erection of the sign in the border area between the parties’ properties. We therefore affirm the summary judgment in part, reverse the summary judgment in part, and remand the cause to'the-trial court for further proceedings.
Facts and Procedural History
The Lancasters and the Evanses are owners of adjoining properties that abut Lake Martin. Both properties are located in the Clearwaters Subdivision (“the subdivision”) that consists of 6 lots. In 1995, the Lancasters purchased their property, which is located in the rear of a slough. The Evanses purchased their property in December 2013. It is undisputed that the properties in the subdivision are subject to the provisions in the “Protective Covenants Plat” (“the restrictive covenants”) recorded in the Tallapoosa Probate Court. In January 2015, the Evanses began the replacement of a pier extending outward from their property into Lake Martin and the construction of the boathouse at the end of the pier over the water of Lake Martin.
On February 2, 2015, the Lancasters filed a complaint alleging that the Evanses had violated the restrictive covenants by beginning construction of the boathouse. The Lancasters alleged that the boathouse did not have their approval or the approval of an Architectural Control Committee for the subdivision. According to the Lancas-ters’ allegations, no Architectural Control Committee had been formed as required by the restrictive covenants. The Lancas-ters claimed that they were pursuing enforcement of the restrictive covenants as adjacent-property owners. The Lancasters sought a temporary restraining order, a preliminary injunction, and a permanent injunction ordering that construction on the boathouse cease and that the boathouse be removed. The Lancasters later amended the complaint to allege additional violations of the restrictive covenants by the Evanses along the adjoining border line between the parties’ properties— namely, the Evanses’ posting of a “no trespassing” sign and the Evanses’ planting of trees obstructing the Lancasters’ view. In the amended complaint, the Lancasters also alleged that construction of the boathouse had been completed.
The Evanses filed an answer denying the allegations that they had violated the restrictive covenants. The Evanses assert *783 ed various affirmative defenses, including that the claims against them are barred by the unclean-hands doctrine. The Evanses asserted counterclaims against the Lancas-ters, alleging trespass and invasion of riparian rights. According to the Evanses’ allegations, the Lancasters had tied a water vessel to a cleat on their property and had walked across their property without their permission in the summer of 2014 and had installed a water line that diverted water from the inlet adjacent to the Ev-anses’ property.
On October 23, 2015, the Evanses filed a motion for a summary judgment. The Ev-anses contended that the provisions of the restrictive covenants regarding the use of Lake Martin were not enforceable against them because those covenants do not touch or concern the property that had been conveyed to them. The Evanses asserted that Lake Martin is owned by Alabama Power Company (“Alabama Power”) and that they had obtained a use permit from Alabama Power to build the boathouse on December 4, 2014. In support of their motion, the Evanses submitted the use permit from Alabama Power allowing for the replacement of their pier and the construction of the boathouse at the end of the new pier. The permit indicated that Alabama Power owned the “pool property” of Lake Martin.
The Evanses conceded that if the boathouse was subject to the restrictive covenants, those covenants prohibited the construction of any structure other than a pier or a dock without the approval of adjacent-property owners, an Architectural Control Committee, and Alabama Power. The Ev-anses asserted that uncertainty as to the existence of an Architectural Control Committee created a latent ambiguity in the restrictive covenants regarding the approval of the boathouse and that, therefore, only the approval of Alabama Power was needed. In support of their assertion that an ambiguity existed, the Evanses referred to the allegation in the Lancas-ters’ complaint that an Architectural Control Committee did not exist and the Lan-casters’ responses to interrogatories in which they listed 11 individuals they stated were a part of an Architectural Control Committee.
The Evanses additionally argued that enforcing the restrictive covenants would create an unjust hardship on them, asserting that the expense of -removing the boathouse outweighed the benefits to-the Lancasters of doing so. The Evanses also argued that the claims against them were barred by the unclean-hands doctrine. They asserted that the Lancasters had violated the approval provisions of the restrictive covenants.by constructing a pier within 15 feet of the Evanses’ extended interior property line without their express written approval as adjacent-property owners. No evidence was submitted by the Evanses to support those assertions.
On November' 11, 2015, the Lancasters filed a brief in opposition to the motion for a summary- judgment, contending that the restrictive covenants prohibited the construction of the boathouse. The Lancasters submitted, among other exhibits, the following: the use permit from Alabama Power, the restrictive covenants, the deed conveying the property to the Evanses, and affidavits from Harold Lancaster, George Hammond, and Walter Lowery, Jr. In his affidavit, Harold Lancaster testified that construction of the boathouse began on January 5, 2015, and that, on the next day, he met with Walter Evans, objected to the structure, and personally delivered to Walter a copy of the restrictive covenants. Harold testified that a week later Walter stated that he would comply with the covenants and build' only a 'pier with boat lifts but that, on January 29, 2015, it *784 became apparent that the Evanses were building a boathouse. He further testified that construction of the-boathouse and an adjoining gazebo was completed by February 7, 2015, after the Lancasters had filed their complaint. He additionally testified that, on March 29, 2015, the Evanses planted pine, .trees and. magnolia trees along the parties’ property line and placed a “no trespassing” sign facing the front of the Lancasters’ house.
The Lancasters argued that the use permit’ from Alabama Power was insufficient to meet the approval requirements in the' restrictive covenants to build a boathouse. The use permit - states the; following regarding covenants:
“Covenant Design Scheme: Alabama Power' Company cooperates with developers on these lakes and encourages compliance with covenants and/or other regulatory/de‘sign schemes put in place by the developers in order to encourage best practices for shoreline management within the developments. It is your responsibility to obtain the necessary architectural board approvals, if such approval is a requirement prior to construction.”
The restrictive covenants contain the following provisions regarding piers and boathouses:- ■
“These covenants are to run with the land and shall be binding on all parties and all persons claiming under them
[[Image here]]
“The following restrictions apply to all lots:
[[Image here]]
“6. Separate Structure. The structures specified in this paragraph are permitted to be erected only if such structures are permanent in nature and blend into the architectural harmony of the main dwelling of the land.
“(a) Piers and Ramps. Piers and ramps shall not be located nearer than fifteen (15) feet to an extended, interior lot line without the express written authority from the adjoining lot owner.
(b) Gazebos on Piers. No structure will be built'over the water other than-a stationary pier and/or floating dock; provided, however, that gazebos on piers will be allowed only if approved by the adjacent lot owners', the Architectural Control Committee, and only if said gazebo does not interfere with the view of other lot owners. Any gazebos on piers cannot have more than 150 square feet of covered area and must be open-air only. All construction . affecting - the shoreline of Lake Martin and. the lake area itself must have approval of [Alabama Power].
“(c) Gazebos on Land. A covered gazebo on land will only be allowed if approved by the adjacent lot owners, the Architectural Control Committee, and only if said gazebo does not interfere with the view of other lot owners. Any gazebos on land' cannot have more than 150 square feet of covered area and must be open-air only.
“(d) Boathouses, Separate Garages, and Guest Houses. Boathouses, separate garages and guest houses must be at least 15 ft. from lot lines and must have the written approval of the Architectural Control Committee,- adjacent lot owners, and [Alabama Power], .
“Detached garages and carports must be of material and design compatible with the main house, must be within setback lines, and have approval of the Architectural Control Committee.
“Guest houses may be built only with approval of the Architectural Control, Committee, must be of material and design compatible-with the main house. *785 Guest houses may have no more than 450 sq. ft., not less than 380 sq. ft.
“No lot may have more than one building (other than boat houses) detached from the house, that building must be appearance compatible with the house. No metal prefab storage buildings are allowed. Architectural Control Committee approval required for all detached structures.”
The restrictive covenants contain the following provision regarding the Architectural Control Committee:
“16. ARCHITECTURAL CONTROL: Architectural Control Committee shall consist of. three property owners. Architectural Control Committee must make available to all property owners .all plans for construction, Notice must be placed on any lot with request for approval for at least ten days prior to approval unless waived in writing by all property owners.”
In response to the Evanses’ assertion that there is a latent ambiguity in' the restrictive covenants, the Lancasters argued that the developers drafting the restrictive covenants clearly intended that a decision by the Architectural Control Committee was not needed if an adjacent-property owner refused to grant permission to a proposed boathouse.
In his affidavit, Hammond testified that he, along with three others, developed the subdivision. He' further testified, in pertinent part:
“4. To protect each lot owner’s view, use and enjoyment of the beauty of Lake Martin, the covenants were' written to require a lot owner to obtain permission from the adjoining lot owner and the Architectural Review Committee for any project that would affect the view or enjoyment of Lake Martin.
“5. It was our intent that if an adjoining landowner reasonably objected to a proposed project that submission to the Architectural Review Committee would not be available to the lot owner.
“6; As the developer of the subdivision, all building construction plans were submitted-to the developer by. each lot owner for compliance and approval untiball lots were sold, thereafter the Restrictive Covenants controlled.” ■
The Lancasters conceded that no formal Architectural Control Committee had been formed at the time the Evanses began construction of the boathouse. They asserted that a “de facto” committee was observed by the property owners for approval of construction within the subdivision.
In response to the Evanses’ argument that removing the boathouse .would create an unjust hardship, the Lancasters-argued-that the Evanses had notice of the requirements in the restrictive covenants and that the boathouse has had a negative impact on the value of their property. In his affidavit, Lowery testified that he had inspected the Lancasters’ property and the-subdivision and had found the following:
“The' Lancaster lot' is located in the slough area of the subdivision and it appears that the develópér of this area wished to keep this lot as valuable as possible in the beginning by protecting it with restrictions on other properties. Because of the location of the lot and the narrowing of the slough, the neighbor’s covered boat dock narrows the slough even'inore. Boating in and out of the slough is now inhibited by the narrowing of the water access. Therefore the restrictions and covenants were written' in a way to maximize the value of [the Lancasters’ lot] and for the other lots in the area. The blocking of the view by the boat dock and the trees will depreciate the value of the subject property, but how. much is difficult to prove. The sub *786 ject property has been depreciated by the blocking of the view with the covered boat dock and if the trees are allowed to mature. It will be devalued even more in the future.”
In response to the Evanses’ argument that the Lancasters’ claims were barred by the unclean-hands doctrine, the Lancasters argued that they had not violated the approval requirements of the restrictive covenants because they had obtained approval from the previous owners of the Evanses’ property before constructing a pier. In support of their argument, the Lancasters submitted a document purportedly signed by.the previous owners of the Evanses’ property that, pursuant to the restrictive covenants, reflected their agreement to allow the' Lancasters to construct a pier within the 15-foot-setback'area.
On March 7, 2016, the trial court entered a summary judgment in favor of the Evanses on the Lancasters’ claims, finding:
“1. The material facts are not in dispute. The issue before the Court is a legal issue relating to applicability and enforcement of restrictive covenants. The [Lancasters] contend that the covenants restrict the ability of the [Evanses] to construct a boathouse. The covenants are ambiguous and attempt to impose restrictions on the use of land owned by a third party.
2. The Court finds that covenants are disfavored and must be strictly, construed. [The Evanses’] Motion, for Summary Judgment is GRANTED. There is no issue of material fact; therefore, the [Evanses] are entitled .to a judgement as a matter of law. This is, a final order related to all of the [Lancasters’] claims.”
Upon the Evanses’ motion, the trial court entered an order dismissing, without prejudice, the Evanses’ counterclaims against the Lancasters.
On April 13, 2016, the Lancasters filed a notice of appeal with the supreme court. The supreme court transferred the appeal to this court pursuant to 12-2-7(6), Ala. Code 1975.
Standard of Review
We apply the following standard of review to a summary judgment:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala. 1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala. 2004).
*787 Discussion
As a threshold matter, we must first determine whether the Lancasters have appealed from a final’judgment. “[I]f there is not a final judgment then this court is without jurisdiction to hear the appeal.” Sexton v. Sexton, 42 So.3d 1280, 1282 (Ala. Civ. App. 2010) (citing Hamilton ex rel. Slate-Hamilton v. Connally, 959 So.2d 640, 642 (Ala. 2006)). “ ‘[Jurisdictional matters are of, such magnitude that we take notice of them at any time and do so even ex mero motu.’” Id. (quoting Nunn v. Baker, 518 So.2d 711, 712 (Ala. 1987)). The summary judgment entered by the trial court did not'address the Ev-anses’ counterclaims against the Lancas-ters. As a result, the summary judgment was not a final judgment. See id. (“A judgment is not final if it fails to completely adjudicate all issues between the parties.”). However, this court has held, and the supreme court has affirmed, that the subsequent dismissal of remaining counterclaims pursuant to Rule 41(a), AJa. R. Civ. P., in such a situation results in a final judgment in the action.[2] Chesnut v. Board of Zoning Adjustment, 208 So. 3d 609, 630-31 (Ala. Civ. App. 2015), affirmed in part and reversed in part on other grounds by Ex parte Chesnut, 208 So.3d 624, 633-34 (Ala. 2016)(affirming this court’s determination as to the' finality of the judgment but reversing our decision on other grounds). Because the trial court entered an order dismissing the Evanses’ counterclaims pursuant to Rule 41(a), a final judgment resolving all controversies was entered in the action. The Lancasters therefore have appealed from a final judgment, and we proceed to consider the merits in this case.
The Lancasters contend that the Evanses’ construction of the boathouse was subject to the restrictive covenants.
“In order for a covenant to be enforced as one that ‘runs with the land,’ it must both (1) have been intended by the parties creating it to run with the land and (2) touch and concern the land. See, e.g., Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1970); Smith v. First Sav. of Louisiana, FSA, 575 So.2d 1033 (Ala. 1991); Patterson v. Atlantic Coast Line R. Co., 202 Ala. 583, 589, 81 So. 85, 91 (1919) (noting that, in keeping with the seminal English case known as ‘Spencer’s case’ (5 Coke, 16), ‘a covenant will not run -with the land if it be merely collateral, and doth not touch or concern the thing demised’).1...
*788 "1One commentator notes that the traditional requirements for a restrictive covenant to;‘run with the land’ at law are ,(1) that the covenant must ‘touch and concern’ the land, (2) that the parties must intend the covenant, to run with the land, and (3) that there must be privity of estate, and that the traditional requirements for a restrictive covenant to ‘run with the land’ in equity are (1) that the covenant must ‘touch and concern’ the land, (2) that the parties must intend the covenant to run with the land, and (3) that the successor to the ‘burden’ must have notice of the covenant. See 9 Richard R. Powell, Powell on Real Property § 60.04[2] (2004) (discussing the requirements and noting the merger of law and equity). We note that, as a practical matter, instruments creating covenants commonly do not express whether the parties intended the covenant to run with the land. Accordingly, the fact that a covenant does in fact touch and concern the land often is seen as the best available evidence of the parties’ intention that the covenant run with the land. See, e.g., Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1970).
“The benefit or burden of a covenant ‘touches and concerns’ the benefited land or the burdened land when it affects the value of that land (Callahan v. Weiland, 291 Ala. 183, 279 So.2d 451 (1973)) or, in the view of the Restatement' (First) of, Property, affects the ‘physical use and enjoyment’ of the land (Restatement (First) of Property § 537).”
Miller v. Associated Gulf Land Corp., 941 So.2d 982, 985 (Ala. Civ. App. 2005).
Asserting' that Lake Martin is owned by a third party, namely Alabama Power, the Evanses contend that the restrictive covenants do not apply to the boathouse because.it was built on the lake and not on the land. The Evanses do not dispute that the restrictive covenants generally apply to their property; however, they argue that the restrictive covenants are not applicable to Lake Martin because the restrictive covenants did not attach to or run with the property owned by Alabama Power. The issue is whether the provisions of the restrictive covenants regarding boathouses “touch and concern” the Evanses’ property. In their appellate brief, the Evanses assert that “[cjommon sense dictates that [the construction of boathouses] allow[s] property owners ease of access and increased use of the lake, and therefore increases] the value of such properties.” Undoubtedly, the boathouse was built to enhance the Evanses’ use and enjoyment of their property, and the evidence in the record indicates that the boathouse is physically connected to the Ev-anses’ property through their pier. We therefore conclude that the provisions of the restrictive covenants applicable to the boathouse “touch and concern” the .Ev-anses’ property and that, as a result, the building of the boathouse was subject to the restrictions contained in the restrictive covenants.
The Evanses assert that- their position is additionally supported by § 33-7-50, Ala. Code 1975, which provides:
“The owner of riparian lands upon navigable waters in the State of Alabama may install in front of their respective riparian lands' wharves, docks, warehouses, sheds, tipples, chutes, elevators, conveyors and the like for receiving, discharging, storing, protecting, transferring, loading and. unloading freight and commodities of commerce to and from vessels and carriers, and may use their riparian lands in connection therewith and dredge,out and deepen the approaches thereto, and may charge *789 and collect reasonable tolls for the use thereof. All such structures are to be subject to such lines and limitations as may at the time of making such’ improvements be laid or placed by any authority of the United States, or of the State of Alabama, who may have authority to control harbor and pier lines,”
As the movants for a summary judgment, the Evanses presented no evidence that Lake Martin is considered “navigable waters” or that the -boathouse was constructed for commercial purposes. Even if § 33-7-50 was applicable in this case, the- Ev-anses have offered no legal authority to show that- the statutory rights provided could not have been subjected to restrictions by contract or covenant. The Evanses therefore fail po show that § 33-7-50 applies in this case.
The Evanses further argue that the Lancasters must prove a direct interference with their riparian rights in order to receive injunctive relief. See Cove Props., Inc. v. Walter Trent Marina, Inc., 702 So.2d 472, 475 (Ala. Civ. App. 1997) (quoting Ulbricht v. Eufaula Water Co., 86 Ala. 587, 590, 6 So. 78, 79 (1888)) (“‘[E]very riparian owner of lands, through- which streams of water flow, has a right to the reasonable use of the running water, which is a private right of property.’ ”). This argument is extraneous to the issues on appeal. The Lancasters alleged that the Evanses had violated the restrictive - covenants. The Lancasters have not alleged that the Evanses interfered with their riparian rights.
The Lancasters contend that the restrictive covenants prohibited the construction of the boathouse. Section 6(b) of the restrictive covenants provides:
“No structure jvill be built over the water other than a stationary pier and/or floating dock; provided, however, that gazebos on piers will be allowed only if approved by the adjacent lot owners, the Architectural Control Committee, and only if said gazebo does not interfere with the view of other- lot owners. Any gazebos on piers cannot have more than 150 square feet of covered area, and must be open-air only.. All construction affecting the shoreline of Lake Martin and the lake area itself must have -approval of [Alabama Power].”
As provided- in Section 6(b), the restrictive covenants allow only a stationary pier, a floating dock, or a gazebo on a pier that meets certain requirements to be built over the water of Lake Martin. Any other structure over the water of Lake Martin is prohibited. The summary judgment refers to the structure built by the Evanses as a boathouse, and the Evanses insist that the structure they built is only a boathouse. According to the evidence in the record, the boathouse was built at the end of the Evanses’ pier over the water of Lake Martin'. Section 6(b) of the restrictive covenants therefore prohibited the construction of the boathouse.
The Evanses argue that an Architectural Control Committee to approve the boathouse had not been established and that the unavailability of the Architectural Control Committee created a latent ambiguity in the restrictive covenants regarding the approval of boathouses. See Vestlake Cmtys. Prop. Owners’ Ass’n, Inc. v. Moon, 86 So.3d 359, 365 (Ala. Civ. App. 2011) (quoting Grove Hill Homeowners’ Ass’n v. Rice, 43 So.3d 609, 614 (Ala. Civ. App. 2010), quoting in turn Smith v. Ledbetter, 961 So.2d 141, 145 (Ala. Civ. App. 2006), quoting in turn Thomas v. Principal Fin. Grp., 566 So.2d 735, 739 (Ala. 1990)) (“‘“‘[A]n ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a *790 choice among two or more possible meanings.’ ” ’ ”). Pursuant to Section 6(d) of the restrictive covenants, the approval of adjacent-property owners, an Architectural Control Committee, and Alabama Power is required for the building of boathouses.[3] However, Section 6(b) of the restrictive covenants prohibits the building of a boathouse over the water of Lake Martin. As a result, the boathouse built by the Evanses was prohibited by the restrictive covenants regardless of whether a latent ambiguity existed regarding the approval requirements of Section 6(d).
The Evanses also argue on appeal alternative grounds upon which, they assert, the summary judgment can be affirmed.
“Although it is true that an appellate court may affirm a judgment of a trial court on a ground not relied upon by the trial court, this is so only if the alternative ground is a ‘valid legal ground.’ Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala. 2003) (subject to due-process constraints, appellate courts ‘will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court’).”
Atkins v. State, 16 So.3d 792, 797 (Ala. Civ. App. 2009).
The Evanses argue that the restrictive covenants are unenforceable under the “change-in-the-neighborhood test.” “Under the change-in-the-neighborhood test, a restrictive covenant will not be enforced if the character of the neighborhood has changed so radically that the original purpose of the covenant can no longer be accomplished.” AmSouth Bank, N.A. v. British W. Florida, L.L.C., 988 So.2d 545, 550 (Ala. Civ. App. 2007) (citing Lange v. Scofield, 567 So.2d 1299, 1301 (Ala. 1990)). The Evanses assert that “the fact that other boathouses exist in [the subdivision] goes to a change in the purpose of the ... subdivision.” They also assert that their permission was not sought before the construction of the other boathouses in the subdivision. The determination of whether the restrictive covenants are unenforceable under the change-in-the-neighborhood test involves questions of fact that were not raised in the submissions before the trial court and were not resolved by the trial court. Therefore, the judgment cannot be affirmed on appeal on this ground. See Slaby v. Mountain River Estates Residential Ass’n, Inc., 100 So.3d 569, 576 (Ala. Civ. App. 2012) (declining to affirm a judgment on a ground involving a disputed issue of fact “not raised or resolved in the trial court”).
The Evanses also argue that a balancing of the equities in the case weighs in favor of the Evanses’ maintaining the boathouse, citing Lange v. Scofield, 567 So.2d at 1302, in which our supreme court adopted the “relative-hardship test”:
“Under that test a covenant will not be enforced if to do so would harm one landowner without substantially benefiting another landowner. [5 R.] Powell, [The Law of Real Property] § 679(3) [ (1987 rev. ed.) ]. ... The factors to be considered in applying this test are well stated in 20 Am. Jur. 2d Covenants, Conditions, & Restrictions § 313, at 876-77 (1965):
“ ‘Broadly speaking, the enforcement of building restrictions is governed by equitable principles, and will *791 not be decreed if, under the facts of the particular case, it would be inequitable and unjust.... The complainant’s right to insist on the restrictive covenant must be clear and satisfactory....
‘“The equitable enforcement of a restriction can be invoked only for the purpose of protecting the benefit which it was the object of the covenant to afford. If the restrictive covenant has ceased to have any beneficial or substantial value to the ... property, it can form no ground for equitable relief.... [I]f the defendant will be subject to great hardship or the consequences would be inequitable, relief will be denied.’ ”
Id. In Maxwell v. Boyd, 66 So.3d 257, 261-62 (Ala. Civ. App. 2010), this court held that the relative-hardship test is inapplicable when the party asserting the defense had notice of restrictive covenants before violating them, stating:
“[T]he ‘relative hardship’ doctrine recognized in Lange is a creature of equity, and it follows that seeking the invocation of the doctrine will require the possession of clean hands. Cf. Hankins v. Crane, 979 So.2d 801, 812 (Ala. Civ. App. 2007) (indicating availability of unclean hands as defense to covenant-enforcement action, but concluding that no factual basis for the defense existed in that case). Equity is to ‘“prevent a party from asserting his, her, or its rights under the law when that party’s own wrongful conduct renders the assertion of such legal rights ‘contrary to equity and good conscience.’ ” ’ Id. (quoting earlier Alabama cases).
“A pertinent specific application of the clean-hands doctrine is that a restrictive covenant should be enforced if the defendant had knowledge of it before constructing an improvement contrary to its1 provisions, even if the harm is disproportionate. Green v. Lawrence, 877 A.2d 1079, 1082 (Me. 2005) (citing 9 Powell on Real Property § 60.10(3)); accord Turner v. Sellers, 878 So.2d 300, 306 (Ala. Civ. App. 2003) (affirming denial of relief from restrictive covenant when the burdened parties ‘knew that- there were restrictions on the free use of their lot when they purchased it’). The knowledge sufficient to warrant denial of the relative-hardship defense need not be actual, but may be constructive. Miller v. Associated Gulf Land Corp., 941 So.2d 982, 989 (Ala. Civ. App. 2005) (noting that trial court’s judgment denying relief from covenant was supported by evidence that the owners of the burdened lot had ‘purchased the subject property knowing of the nature of the deed restriction and therefore at least constructively knowing’ of nearby land conditions and property owners’ rights).”
The Lancasters presented evidence indicating that the Evanses had constructive notice of the restrictive covenants through the deed conveying their property and that Harold Lancaster personally delivered the restrictive covenants to Walter Evans before construction of the boathouse had been completed. The Evanses presented no evidence to the contrary. Accordingly, we conclude that the evidence supports only a finding that the Evanses continued to build the boathouse despite having notice of the restrictive covenants. Therefore, the relative-hardship doctrine was not available to the Evanses as a defense. As a result, we are not presented with any grounds to affirm the trial court’s denial of the Lancasters’ claims that the Evanses violated the restrictive covenants by building the boathouse.
The Lancasters also alleged claims that the Evanses violated provisions of the restrictive covenants by planting *792 trees and erecting a sign along the border line between their adjoining properties. The Lancasters fail to offer any argument regarding those issues on appeal. “When an appellant fails to argue an issue in its brief, that issue is waived.” Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982). We therefore cannot reverse the trial court’s judgment insofar as it denied those claims.
For the foregoing reasons, we reverse the summary judgment denying the Lan-casters’ claims that the Evanses violated the restrictive covenants by building the boathouse, but we affirm the summary judgment in favor of the Evanses on the Lancasters’ claims that the Evanses violated the restrictive covenants by planting trees and erecting a sign along the border of their properties. The case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
' Thompson, P.J., and Pittman and Moore, JJ., concur.
Thomas, J., concurs in the result, . without writing. :-

. The Lancasters contend that the structure built by the Evanses included a gazebo. The trial court, in its summary judgment, refers to the structure only as a boathouse.

. Rule 41(a) provides:
"Voluntary dismissal: Effect thereof.
"(1) By Plaintiff; By Stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of this state, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of Alabama, or -of the United States, or of any state, an action based on or including the same claim.
"(2) By Order Of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiffs instance save Upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff’s motion to dismiss, the action may be dismissed but the counterclaim shall remain pending for adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.”

. Section 6(d) provides, in part: “Boathouses, separate garages and guest houses must be at least 15 ft. from lot lines and must have the written, approval of the Architectural Control Committee, adjacent lot owners, and [Alabama Power], ...”